**FREY, Plaintiff-Appellant, v. QUEEN CITY PAPER COMPANY, Defendant-Appellee.**

Ohio Appeals, Second District, Miami County.

No. 435.   Decided March 29, 1946.

250

Michael E. Norris, Troy, for plaintiff-appellant.

Robert A. Price, Troy, Shipman & Shipman, Troy, for defendant-appellee.

## OPINION

By HORNBECK, P. J.

This is an appeal on questions of law from a judgment on behalf of defendant after the trial judge upon trial had sustained a demurrer at the conclusion of plaintiff's case.

The action originally proceeded as for an injunction restraining the continuance of a nuisance and for property damages and damages by reason of personal inconvenience. Upon the trial of the cause plaintiff withdrew his prayer for injunction and the cause proceeded upon his claim for damages. The nuisance of which plaintiff complained and upon which he predicated his cause of action was the operation on and after March 4, 1943 by defendant of a furnace and heating plant installed November 15th, 1942, which plant it was

claimed was fed by a certain type of very fine coal which was forced or drawn into the furnace by a fan or blower and that said particles of coal, both burned and unburned, by reason of this forced operation were released and drawn into the outside atmosphere by way of a smokestack on a building of defendant company.

The amended petition averred and the evidence tended to support the claim that particles of matter emanating from the stack of defendant company's plant were blown over and upon the premises of which plaintiff was joint owner and onto the roof, spouting, roof channels of the buildings on said premises, upon window sills, that the fly ash penetrated window ledges and entered the living room and sleeping quarters of plaintiff's home; that the sediment was deposited on the porches, walks, curbs and gutters; that it fell upon the person and clothing of plaintiff and his family; that it was blown into and carried into the home and accumulated on the furniture, floors, carpets and linoleum; that it was deposited on the ground and in the grass and vegetation of plaintiff's premises; that it prevented the growing of garden produce and had reduced the value of plaintiff's real estate.

The plaintiff's testimony consisted not only of an expert witness who had made chemical tests of material which he testified came from one source and which he stated an analysis showed to be fly ash, but plaintiff, his wife and neighbors who had observed the conditions about plaintiff's premises. Among other testimony it developed that plaintiff had placed storm windows on one side of his house and that they had not been taken off or raised for years because of the soot from the stack on defendant's plant; that it was necessary to sweep the porches and walks several times a day; that the residue would accumulate to a depth of 1½ inches or more in places during a period of a few hours; that the fly ash was present in the grass and that because of it the earth had become brittle as one would walk over it; that the ash was in all parts of the house including dining room, bed rooms and had even gotten into food; that it was unbearable to sit on plaintiff's porch without something on the head; that plaintiff at one time during the period involved had carted away ten wheel barrow loads consisting mostly of the fly ash. The only testimony as to the extent of the pecuniary damage to the realty was proffered by a real estate agent who said that the sale value of the property had been, by reason of the deposit upon the land, reduced from 15 to 20 per cent, but there

was no proof of the market value of the land at any time prior to the acts complained of nor during the period covered by the amended petition.

The trial judge sustained the demurrer upon the theory that there was no measuring stick by which he could determine the extent of plaintiff's damage.

As we understand, the claim of appellee in this court is that it does not question the right of plaintiff to recover damages if it could be determined that the material, the deposit of which it is claimed caused the damages, had come from the stack on appellee's plant. This position is taken largely because it develops that there was a railroad some two squares from plaintiff's premises and there was also a switch engine which moved upon the premises of defendant and that it appeared that these locomotives would discharge like material to that which came from defendant's stack. It is true that Mr. Williams, the expert, stated that a locomotive does send out fly ash and material that would resemble the material in the containers. He also stated that the similarity in shape of the deposits indicated that they came from a common source and that the locomotive would only throw off fly ash when operated under full draft. Without respect to this testimony alone, the plaintiff and other of his witnesses stated that none of the ill effects which they had noted by reason of the deposit upon the lot, the buildings, outside and inside, had been caused from any deposit coming from locomotives.

The effect of the testimony offered by the plaintiff is such that giving to it that favorable intendment which was required upon the demurrer it clearly tends to prove that the deposit of fly ash of which complaint is made in the amended petition came from the stack of defendant's plant. The rule well recognized is that upon motion to direct a verdict, which is analogous to the demurrer in this case, the evidence must be given the most favorable interpretation in behalf of the plaintiff and will not support a judgment against him unless he has failed to provide evidence tending to establish an essential element of his case and fails to prove any fact from which a reasonable inference tending to prove that element may be drawn. **Pope, Admx. v Mudge, et al., 108 Oh St**

192; Babitt v Say, Admr., 120 Oh St 177; Cleveland Ry Co. v Krofts, 125 Oh St 126; Martin, Jr. v Heintz, 126 Oh St 227.

The judgment entry recites that the court finds:

"first, that any inconvenience or detriment which may have occurred to affect the property of the plaintiff was removed before the hearing of the case; second, that the plaintiff failed to establish any damages."

The first ground is not supported by the record because at least two witnesses brought evidence into court on the day they testified that the deposit was still being thrown upon the premises of the plaintiff. However, if this proposition of the entry was in accord with the record it would not support the sustaining of the demurrer because the period of time covered by the averments of the amended petition would extend from March 5, 1943, the beginning of the complaint of plaintiff to the date when the amended petition was filed. Had it been the purpose of the plaintiff to, rely upon a condition existing up to and subsisting at the time of trial a supplemental petition should have been filed.   Upon the second proposition of the finding in the judgment entry, we might support the conclusion of the trial judge that there was insufficient proof of the measure of damages to the real estate as such and likewise to the furniture or household effects of the plaintiff.   Such a finding as to the household effects is supported by Beiser v Grever & Twaite Co., 8 O N P 398, upon which the trial judge relied.   However, there is a third element of damage pleaded and which the evidence tends to support, which, in our judgment, should have been considered and determined in favor of the plaintiff upon the case made when the demurrer was interposd.   This element is the damage by way of physical discomfort to the plaintiff in the enjoyment of his home and premises.

We are not without authority in Ohio on this question. In McClung v The North Bend Coal & Coke Co., 9 O C C 259, second syllabus, the court says:

"A private nuisance may be created by casting either smoke, soot or gases upon the property of another to, his physical discomfort or injury while in the lawful possession thereof, or to the substantial injury of vegetation, trees or buildings thereon."

In **Graham & Wagner, Inc. v Ridge, 41 Oh Ap 288,** the action was restricted to damages for injury to property and health occasioned by the creation and maintenance of a private nuisance. Judge Sherick at pages 292 and 293, quoting from 20 Ruling Case Law, 470, says:

"In assessing the damages for the maintenance of a nuisance in the neighborhood of a residence or dwelling, the jury may look to such injury as occurs to the use of the property as a residence, taking into consideration the discomfort and annoyance which the owner has suffered from the nuisance."

Indeed this case affords some support for the claim that the plaintiff here had a right to have the trial court consider the extent of his damage to his real property although there was no express testimony as to the measure of this damage in dollars and cents. See page 293 of the opinion.

But this being a continuing nuisance and one that can be abated, the measure of damages is not the decrease in value of the fee but the impaired value of the use of the premises.

In Dieringer v Wehrman et al, 9 O D (Re) 355, the action was by the owners who were not the occupants. It was there held the measure of damages would be whatever they sustained in the diminution of rents, in the failure to rent the property, and for injury to the property or the cost of repairs.

In Conestee Mills v Greenville, (S. C.) 158 S. E. 113, it was held that the measure of damages is the depreciation in rent value of the property, even though the owner occupied it. Much of the evidence developed in the instant case properly reflected damages to the use of the realty but it was not brought down to such definite limits as to time or extent as would have afforded the trial judge proper basis for an award on this element of damages.

In City of Mansfield v Hunt, 19 O C C 488, at page 497 of the opinion it is said:

"In a case for injury to the comfortable enjoyment of property, by the owner and occupant thereof, no precise rule for ascertaining the damage can be given, as, in the very nature of things, the subject matter affected is not susceptible of exact measurement; therefore the jury must be left to say what in their judgment the plaintiff ought to have in money,

and what the defendant ought to pay, in view of the discomfort or annoyance to which the plaintiff and his. family have been subjected by the nuisance, * * *."

In **Ohio Stock Food Co. v Gintling, 33 Oh Ap 82**, third syllabus, the court says:

"The owner of a homestead is entitled to damages for annoyances and inconveniences suffered by him which have been occasioned by a nuisance, though he shows no damage to the dwelling house or improvements upon said property."

Outside of Ohio the weight .of authority supports the right of the plaintiff in this case to have the court pass upon the extent of his damage upon the evidence which he presented. 39 Am Jur 398:

"The owner of a residence or dwelling house occupied by him as a home is entitled to just compensation for annoyance, discomfort and inconvenience caused by a nuisance on adjoining property."

and recovery is not limited. to damages to plaintiff's property and its rental value.

In a note to Phillips Petroleum Co. v. Ruble (Okla.) 142 A L R 1303, (note at page 1316) it is said:

"The authorities strongly preponderate in · support of the doctrine that an occupant of real estate (whether owner or ·not) may recover damages for personal discomfort, annoyance, etc., resulting to him from a nuisance, in addition to, or separate from, damages suffered in respect of the market value of the premises or injuries to or destruction of building, crops, etc., thereon."

Cases are cited from twelve states of the United States including Olpp v Hocking Valley R R Co, 22 O N P N S 433.

A leading case is Judson v Los Angeles Suburban Gas Co. et al. (Cal.) 26 L R A (NS) 183, which held that for the nuisance there plead damages may be awarded although it did not appear that the value of the property was depreciated, the rental value impaired, or the health of the occupants injured and although the discomfort caused is not constant.

The damages awarded were for discomfort or annoyance caused in the use of plaintiff's property. Upon the question of the nature of proof as to the extent of damages it is said in the opinion at page 187:

"In the very nature of things, the amount of detriment *sustained is not susceptible of exact pecuniary computation.* It is for the court to say what sum of money the plaintiff should receive in view of the discomfort or annoyance to which he has been subjected."

In this cited case which was predicated upon a nuisance created by the operation of a gas manufacturing plant in the creation of smoke, odor and noise interfering with the comfortable enjoyment of plaintiff's property it was urged defensively that the main line of an electric railway passed very near plaintiff's studio and the tracks of two steam railways were within 100 feet of his property. The Court said:

"The fact that other sources of possible discomfort to plaintiff existed in the neighborhood of his property is no defense to an action of this kind." Citing Robinson v. Baugh, 31 Mich. 294.

Dauberman v. Grant (S. Ct. Cal.) 48 A. L. R. 1244, 7th syllabus and page 1247:

"It is not necessary to recovery to show actual damage to property caused by the nuisance of smoke and soot, as one is entitled to recover for personal discomfort and annoyance to which he has been thereby subjected" and "it is a question for the trial court to determine the amount of the compensation which he should receive."

Without further discussion of the authorities, we are satisfied that upon the state of the record at the conclusion of plaintiff's case there was sufficient proof of damage in the particulars heretofore discussed to require that the court overrule the demurrer to the evidence and to put the defendant upon proof of its defense.

Judgment reversed and cause remanded for new trial.

MILLER and WISEMAN, JJ., concur.