OPINION *Page 2 
{¶ 1} Plaintiff-appellant Wesbanco Bank, Inc., appeals a judgment of the Court of Common Pleas of Guernsey County, Ohio, entered in favor of defendants-appellants David G. Hays and Lloyd McGilton dba Lloyd's Towing Service, after a bench trial. The Bank assigns six errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT ERRED BY FAILING TO RECOGNIZE THAT THE PLAINTIFF'S REQUESTS FOR ADMISSIONS DIRECTED TO THE DEFENDANT LLOYD MCGILTON, DBA LLOYD'S TOWING SERVICE, WERE ADMITTED AS A MATTER OF LAW FOR FAILURE TO RESPOND.
 {¶ 3} `II. THE COURT'S CONCLUSION OF LAW THAT THE BANK WAS AWARE FROM AT LEAST AUGUST 15, 2005 THAT THE CHEVY S-10 WAS BEING STORED BY LLOYD'S WAS MADE IN ERROR. LLOYD'S DID NOT CONFER A BENEFIT ON THE PLAINTIFF.
 {¶ 4} "III. THE TRIAL COURT ERRED IN CONCLUDING THAT `AS SOON AS THE BANK HAD TAKEN APPROPRIATE LEGAL ACTION IN THIS MATTER, THE VEHICLE WAS RELEASED BY LLOYD'S PURSUANT TO THIS COURT'S ORDERS.
 {¶ 5} "IV. THE COURT COMMITTED ERROR AND AN ABUSE OF DISCRETION BY OVERRULING THE SUPREME COURT OF OHIO AND THE OHIO REVISED CODE BY FINDING THAT, THIS CASE SHALL SERVE AS PRECEDENT THAT A LIEN HOLDER DOES HAVE THE RIGHT TO OBTAIN ITS COLLATERAL AFTER PAYMENT OF REASONABLE CHARGES TO A TOWING COMPANY FOR THE BENEFIT OF HAVING ITS COLLATERAL STORED AND PROTECTED.' *Page 3 
 {¶ 6} "V. THE TRIAL COURT ERRED IN GRANTING LLOYD'S LEAVE TO FILE A COUNTERCLAIM ONE MONTH PRIOR TO TRIAL.
 {¶ 7} "VI. THE COURT COMMITTED ERROR AND AN ABUSE OF DISCRETION BY CONCLUDING THAT THE PLAINTIFF FAILED TO ESTABLISH ITS BURDEN OF PROOF THAT LLOYD'S KNOWINGLY DEPRIVED THE PLAINTIFF OF ITS PROPERTY."
 {¶ 8} The trial court made findings of fact and conclusions of law. The court found on or about July 26, 2005, David G. Hays was involved in an automobile accident while driving his Chevy S-10 truck in Guernsey County, Ohio, resulting in damages to the vehicle. The Cambridge Police Department called Lloyd's Towing to remove the vehicle from the scene. Lloyd's towed the vehicle away from the scene and to its storage facility. At the time of the accident, David Hays was the title owner of the Chevy S-10 truck and Wesbanco Bank was secured lien holder.
 {¶ 9} On or about July 27, 2005, Hays contacted Lloyd's to confirm the whereabouts and condition of the truck, and advised Lloyd's he wanted to retrieve the vehicle. On or about August 9, 2005, Lloyd's contacted Hays' insurance company and discovered Hays did not have insurance to cover the repairs or towing and storage costs. On or about August 15, 2005 Lloyd's discovered appellant Wesbanco Bank was the secured lien holder of the vehicle. Lloyd's contacted the bank and advised it of the vehicle's location and of the charges accumulating for towing and storage of the vehicle at the rate of $15.00 per day.
 {¶ 10} The trial court found on or about August 18, 2005, Wesbanco advised Lloyd's that Hays was current on his payments and Wesbanco could do nothing *Page 4 
concerning the vehicle. Lloyd's then contacted Hays to come and retrieve the vehicle and to pay the towing and storage charges. In response, on or about August 30, 2005, Hays contacted Lloyd's and informed it he would retrieve the truck.
 {¶ 11} The court found on or about September 9, 2005, Lloyd's sent an abandoned vehicle form to the Ohio Bureau of Motor Vehicles. OBMV returned the form on September 21, stating the value of the vehicle was over $2500. The abandoned vehicle form stated Hays was the vehicle owner and the bank was the lienholder. The court found Lloyd's notified the bank that either the bank or Hays must pay all the charges to retrieve the vehicle or Lloyd's would attempt to obtain ownership through OBMV.
 {¶ 12} The court found on or about September 12, 2005, the bank informed Lloyd's Hays was in default of his payments. Lloyd's again advised the bank the vehicle had been damaged in an accident. Lloyd's advised Wesbanco the total towing and storage charges were $860.00, and accruing at the rate of $15.00 per day. On or about September 14, 2005, the bank asked Lloyd's for the total cost of towing and storage, which was then $890.00. On September 17, 2005, Hays contacted Lloyd's and advised he would catch up on his payments to Wesbanco.
 {¶ 13} The trial court found on or about September 20, 2005, the bank contacted Lloyd's and specifically directed it not to release the vehicle to Hays until he becomes current with his payments. Thereafter, on or about October 12, 2005, the bank asked Lloyd's if Hays had made any arrangements to retrieve his vehicle, and asked again for the total towing and storage charges. On or about October 17, 2005, Wesbanco offered Lloyd's $500.00 to $525.00 as payment in full for the towing and storage charges, which *Page 5 
then totaled $1,385.00. Lloyd's declined the bank's offer, and counter-offered for one-half, $692.50, but Wesbanco declined the offer.
 {¶ 14} The court found on or about October 24, 2005, Wesbanco again contacted Lloyd's regarding its offer. Eventually, about February 21, 2006, Lloyd's released the vehicle to Wesbanco pursuant to the court's order. On or about March 18, 2006, Skipco, an agent of Wesbanco, sold the vehicle for $1,450.00.
 {¶ 15} The bank alleged Lloyd's knowingly deceived Wesbanco and deprived it of its property. The bank prayed for a total judgment of $47,000.00, representing liquidated damages of three times the value of the truck and another vehicle Lloyd's had stored. Lloyd's counterclaim demanded Wesbanco pay for the towing, storage, and cleanup of the accident scene in the amount of $3,340.00.
 {¶ 16} The trial court concluded as a matter of law the bank had failed to establish Lloyd's knowingly deceived or deprived it of its property. The court found the bank and Lloyd's had engaged in ongoing commercial negotiations to resolve the matter, which also involved a third party, Hays. The court found the issue was whether Lloyd's "seasonably" contacted the bank and whether Lloyd's conferred a benefit on the bank such that Lloyd's could recover the accrued charges based on either implied contract or quantum meruit. The court found as a matter of law on September 20, 2005, the bank directed Lloyd's not release the vehicle to Hays. The court found from at least August 15, 2005, the bank was aware Lloyd's was storing the truck. The court found Lloyd's conferred a benefit on the bank by towing and storing the vehicle, and concluded the bank's complaint for deception, theft, and treble damages must be denied. The court determined the reasonable value of the implied contract and quantum *Page 6 
meruit was $692.50 as of October 17, 2005, and Lloyd's gave the bank notice storage charges of $15.00 per day thereafter would accrue until the bank took the necessary steps to secure the vehicle. The court found as soon as the bank took appropriate legal action, Lloyd's released the vehicle. The court found the value of the vehicle on October 25, 2005, ranged from $3,600.00 for $4,375.00.
 {¶ 17} The court found Lloyd's was entitled to judgment on its counterclaim in the amount of $2,430.00 plus court costs, which represents the bank's offer of $525.00 on October 17, 2005, plus $15.00 per day thereafter.
 I. {¶ 18} In its first assignment of error, the bank argues the court erred in permitting Lloyd's to respond to the Requests for Admission late, and failed to deem the Requests for Admissions admitted. The requests at issues are number three, four, five, six, seven, eight, and nine. Lloyd's responded "N/A", and did not deny or explain the non-denial. The bank argues the court committed plain error by ruling the request for admissions were moot.
 {¶ 19} Actions are moot when they involve no actual genuine controversy which can definitely affect the parties' existing legal relationship, Lingo v. Ohio Central Railroad, Inc., Franklin App. No. 05AP2006, 2006-Ohio-2268, at paragraph 20, citations deleted. Ohio courts have long recognized a court should not entertain jurisdiction over cases without actual controversies, Tschantz v. Ferguson (1991),57 Ohio St. 3d 131.
 {¶ 20} Our review of the record discloses the bank's original complaint dealt with a second vehicle, a 2000 Chevrolet Silverado, involving third parties William Ward and Rick D. Bamfield. The Requests for Admissions as issue refer only to the Silverado. *Page 7 
 {¶ 21} Wesbanco dismissed all of its claims regarding Bamfield without prejudice on February 2, 2006, although it maintained a claim against Lloyd's for storing the Silverado. The Court found Bamfield had satisfied his loan with the bank and Lloyd's had released the Silverado to Bamfield. The court found the issues relating to this vehicle were not relevant to any remaining surviving claims. We agree with the trial court the issues regarding the Silverado were resolved, and as such, the Requests for Admission referring to it were moot.
 {¶ 22} The first assignment of error is overruled.
 II. {¶ 23} In its second assignment of error, the bank argues the court was incorrect in finding as a matter of law it was aware at least from August 15, 2005, that Lloyd's was storing the Chevy S-10. Lloyd's answered a Request for Admission stating it had not contacted the bank prior to September.
 {¶ 24} The trial court cited Hollis Towing v. Braden Greene,155 Ohio App. 3d 300 and General Electric Evendale Employees Federal Credit Unionv. Coffey's Body Shop Towing Service, Inc. (June 5, 1991), Montgomery App. No. 12430. In Coffey's Body Shop Towing Service, Inc., the Second Appellate District found although the towing company's lien for the storage of the car was not superior to the credit union's lien, nevertheless, the credit union was obligated to the garage owner under an implied contract of storage if the credit union knew the vehicle was being stored, but took no action to reclaim it. The court found it was a factual issue for the trier of fact as to when the party charged with the implied contract of storage reasonably should have made *Page 8 
arrangements to reclaim the car, which, in turn determines when the implied contract of storage first came into existence. Coffey's BodyShop at 3.
 {¶ 25} It appears the trial court should have accepted Lloyd's admission, although conflicting testimony was later presented at trial. However, we find any error is not prejudicial. The court did not use August 15 as the beginning of the implied contract. Rather, the trial court found the benefit to the bank was $525.00 on October 17, 2005, when the bank offered to settle the account for that amount.
 {¶ 26} The record clearly supports the court's finding there were on-going commercial negotiations between the bank and the towing company. Further, the court found on September 20, 2005, the bank specifically instructed Lloyd's to hold the vehicle and not release it to Hays. We find at least from that date the contract between the bank and Lloyd's was not an implied contract, but an express one wherein the bank contracted with Lloyd's to preserve its collateral.
 {¶ 27} The second assignment of error is overruled.
 III. {¶ 28} In its third assignment of error, the bank argues it filed its motion for an order of possession after four months of negotiations with Lloyd's, and the court should have issued an order granting the request immediately. Instead, the court scheduled a hearing for 39 days after the motion was filed. The bank argues it should not have to pay Lloyd's daily storage rate for the days in which its motion was pending.
 {¶ 29} The bank's motion for the order of possession of property was made pursuant to R.C. 2737.03. Pursuant to R.C. 2737.04, Lloyd's had five days to request a hearing. Pursuant to R.C. 2737.06, if Lloyd's did not request a hearing or a *Page 9 
continuance, and has not posted a bond, the court was required to hold a hearing promptly, unless the bank consented to the setting of a hearing at a later date.
 {¶ 30} The bank filed its complaint for damages more than two months before it filed the motion for possession of property. The trial court scheduled an evidentiary hearing on the motion for possession for the same time as the pre-trial conference. We find it was not unreasonable of the court to do so given the on-going litigation between the parties, and it does not appear the bank ever objected to the hearing date. The court sustained the bank's motion for possession of the property on the day of the hearing. We find the bank's failure to object to the hearing date waives any argument the court was dilatory in hearing the motion.
 {¶ 31} The third assignment of error is overruled.
 IV. {¶ 32} In its fourth assignment of error, the bank argues the court erred as a matter of law and abused its discretion by "overruling the Supreme Court of Ohio and the Ohio Revised Code". The bank cites us to R.C.4505.13 and Snyder v. Ryan (1965), 2 Ohio St. 2d 171.
 {¶ 33} R.C.4505.13 and Snyder v. Ryan deal with liens. The trial court did not find Lloyd's lien was superior to the bank's, and we find the statute and Snyder v. Ryan inapplicable.
 {¶ 34} The fourth assignment of error is overruled.
 V. {¶ 35} In its fifth assignment of error, the bank argues the trial court should not have granted Lloyd's leave to file its counterclaim one month prior to trial. *Page 10 
 {¶ 36} The bank concedes Civ. R. 15 (A) directs courts to grant leave freely when justice so requires. Lloyd's request for leave to file its counterclaim argued it had been unable to determine its damages until after the bank took possession of the vehicle.
 {¶ 37} In Hoover v. Sumlin (1984), 12 Ohio St. 3d 1, the Ohio Supreme Court held a trial court has discretion in determining whether to grant a motion for leave to amend a pleading, but the Rules favor a liberal amendment policy. The Supreme Court found a motion for leave to amend should be granted unless the court finds bad faith, undue delay or undue prejudice to the opposing party, Hoover at 6, citations deleted.
 {¶ 38} Although the bank objected, arguing Lloyd's counterclaim was filed too close to the trial date to permit the bank sufficient time to prepare its defense, the bank did not move the trial court for a continuance. We find the trial court did not abuse its discretion in permitting Lloyd's to file its counterclaim. Accordingly, the fifth assignment of error is overruled.
 VI. {¶ 39} In its sixth assignment of error, the bank argues the court abused its discretion in finding the bank had not met its burden of proving its claim Lloyd's had knowingly concealed or otherwise deprived the bank of its property.
 {¶ 40} We find the trial court did not err. Initially the bank could not claim the vehicle while Hays was current on his payments. After Hays did default, the bank actually requested Lloyd's not release the vehicle to him. We find the court correctly found the bank had not proven Lloyd's converted its property.
 {¶ 41} The sixth assignment of error is overruled. *Page 11 
 {¶ 42} For the foregoing reasons, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed.
Gwin, P.J., and Wise, J., concur; Hoffman, J., concurs in part; dissents in part *Page 12