[Cite as *Amend v. Morgan*, 2015-Ohio-3185.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| EDWARD D. AMEND | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 14-COA-041 |
| GARRETT C. MORGAN, ET AL | : |  |
|  | : |  |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil appeal from the Ashland County
                             Common Pleas Court, Case No.12-CIV-092


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      August 6, 2015


APPEARANCES:

For Plaintiff-Appellant              For Defendants-Appellees

MATTHEW MALONE                       JOSEPH KEARNS, JR.
10 E. Main St.                       Box 345
Ashland, OH  44805                   153 West Main Street
                                     Ashland, OH  44805

*Gwin, P.J.*

{¶1} Appellant appeals the trial court's judgment entry granting leave to file counterclaim of Garrett Morgan and the jury verdict with regards to appellees' counterclaims.

*Facts & Procedural History*

{¶2} Appellant Edward Amend and appellees Garrett ("Gary") and Elizabeth Morgan ("Elizabeth") are adjoining property owners. Appellant owns and lives at 1901 Twp. Road 1215 in Ashland, Ohio and appellees own and live at 1903 Twp. Road 1215, Ashland, Ohio. Appellant has a twenty (20) foot easement over appellees' property for ingress and egress.

{¶3} On March 14, 2012, appellant filed a complaint against Gary alleging that Gary damaged appellant's easement by unlawfully diverting surface water over the easement's surface, causing erosion. Appellant sought injunctive relief requiring Gary to redirect the surface water back to its natural course and to repair the easement. Appellant also sought compensatory damages for costs he incurred in repairing damage to the easement caused by the diverted surface water. On April 3, 2012, Gary filed an answer to the complaint. On April 25, 2013, the trial court set a bench trial for September 30, 2013. On May 31, 2013, appellant filed a motion to join appellee Elizabeth Morgan, which the trial court granted on June 3, 2013 and who was served with the complaint on June 12, 2013. On July 2, 2013, Elizabeth filed an answer to the complaint and counterclaim for intentional infliction of emotional distress, trespass, nuisance, and invasion of privacy.

{¶4} On July 2, 2013, Gary filed a motion for leave to file counterclaim for intentional infliction of emotional distress, trespass, nuisance, and invasion of privacy. Appellant filed a memorandum in opposition, arguing that the actions existed at the time the answer was filed and since all discovery was complete by January of 2013, re-opening would result in added expense and would begin anew a case pending for more than a year. On July 5, 2013, the trial court granted Gary's leave to file counterclaim. .

{¶5} On September 9, 2013, the trial court continued the trial to February 11, 2014 since Elizabeth was added as a party in June and the counterclaims were filed in July. The trial court conducted a jury trial starting on February 11, 2014.

{¶6} Appellant testified that the problems with appellees began in December of 2011 when they started using the driveway in the easement, did not help to maintain it, and left trash on it. Appellant stated that appellees' visitors slung mud into the easement driveway, appellees put a satellite dish upside-down over a culvert in the easement, and appellees brought water down into the culvert in the easement by digging a ditch. According to appellant, after Gary dug the ditch, the water came across the easement when the culvert was plugged. Appellant testified that the culvert now is filled with rocks, leaves, ashes, and debris and obstructs the water flow going through the culvert. Appellant stated that, due to the water, it is difficult for cars to pass on the easement. Appellant testified that appellees put up a spotlight on a shed facing the easement which blinds him when he comes down the driveway.

{¶7} Appellant stated that he never yelled at appellees and that he never shot anything on appellees' property. However, he was upset about appellees' goats on his property. Further, that no trespassing signs were put on his shed because he did not

want trespassers, including appellees, on his property. Appellant testified that he had no problems with other neighbors and he is civil to his neighbors.

{¶8} Terry Wallace ("Wallace") is a previous owner of the 1903 Twp. Rd. home. Wallace testified that he moved because he had problems with appellant and appellant's son, as they were not civil.

{¶9} Gary testified that shortly after he moved in the home in 2006, appellant came down the driveway and told Gary he needed to keep the culvert and ditch clean. Gary has never seen trash in the culvert and stated there is no erosion on the easement that hinders a vehicle driving up the property. Further, that he has offered to replace the culvert pipe. Gary stated that he placed a satellite dish over the culvert to keep his children and debris out of it and the satellite dish does not impede water from going into the culvert. Gary stated that appellant wrote "Keep Out Boy" in bright orange spray paint on his shed in 2 foot letters that can be directly seen from appellees' home and that appellant re-sprays every few months. Gary testified that appellant wrote "No One," "Keep Out," and "No Gary's Allowed" on appellant's hog barn that Gary can see from his house. Further, that appellant put 60-70 ribbons along the property line, pulled out the fence posts on the property line approximately 10-15 times, and put 6-7 neon orange "No Trespassing" signs facing appellees' property. Gary stated that the last time appellant pulled out the fence posts, there was grease on them and appellant hid in the bushes to see Gary's reaction.

{¶10} Gary testified that appellant pulled a gun on him when firing a warning shot at appellees' goats to chase them back onto appellees' property. Gary stated that appellant stares at him and his family while stopped in the middle of the easement,

spins his tires and revs his vehicles in the easement, drives his golf cart up and down the property line, and these actions make Gary feel uncomfortable. Gary stated that appellant revs his tractor in the middle of the night and shines flashlights in the middle of the night. Gary testified that he has been on medication for anxiety for eight months due to stress and anxiety, and is on medication for ulcers. Without the medication, his heart rate increases, he is stressed, and is sick to his stomach. Gary has seen a counselor for stress. Further, he has missed work, has a reduced social life, has no privacy in his house, and feels like he is being constantly harassed by appellant. Gary believes his privacy has been invaded and is uncomfortable with his wife and children being in the house alone.

{¶11} Richard Morgan ("Richard"), Gary's father, testified that appellant utilized foul language towards him. Further, that since Gary bought the house, he has been missing work because of an upset stomach, spent the night in the hospital, lost weight, and is taking medication. Richard could not say for sure if Gary has a specific diagnosis linking his health issues to the dispute with appellant.

{¶12} Elizabeth testified when she first met appellant, he told them they had to clean out the ditch and approached them aggressively. Elizabeth stated that appellant: revs his tractor engine pre-dawn, shines flashlights onto their property for several minutes, stares at them with binoculars from his property, drives a golf cart back and forth near the property line multiple times, and called her a "cunt" twice, once while his car was in the easement. Elizabeth testified that, while he was in the easement, appellant has taken multiple photographs, revved engines, and driven fast and slow up and down the easement. Further, appellant's shed says "Keep Out" and "No Gary's."

Elizabeth was present when appellant shot at appellees' goats to get them off her property. This made her uneasy and Gary was distressed and worried about their safety.

{¶13} Elizabeth testified that she is scared on a daily basis for her and her children and is very upset about the situation. She cannot use her property as intended. She used to enjoy being outside with her children and now cannot let them go up and play because something might happen to them. She used to ride four-wheelers and do yard and garden work, but now does not. She does not go outside when she is home, does not have many friends over, and does not go on vacation because she is afraid to leave the house unattended. Elizabeth testified these concerns are based upon everything going on with appellant, which she stated has escalated in the past two years. Elizabeth stated that Gary used to be active and now just wants to sleep, stay inside, and not go anywhere. She has seen a counselor for issues with appellant and to help with her marriage. The situation with appellant has put a financial strain on her marriage, emotional strain on her, and affected her daily routine. She testified that her sleep has been affected and she does not feel safe in her home. Elizabeth finally stated that she feels her privacy is being invaded as she does not feel like she has any privacy and has suffered mental harm and anguish.

{¶14} At the close of the evidence, appellant moved for a directed verdict on appellees' intentional infliction of emotional distress claims, which the trial court granted. Both parties agreed to submit five verdict forms to the jury and jury instructions were given on appellant's claim and appellees' claims for trespass, nuisance, and invasion of privacy. The jury found in favor of appellees on appellant's claims and awarded

appellant no damages.  On Verdict Form 3, the jury found in favor of appellees "on one or more of their claims" and awarded appellees damages against appellant in the sum of $3,000.  The jury also awarded appellees $4,000 in punitive damages and granted appellees attorney fees.  The trial court held a hearing on attorney fees on April 21, 2014.  On November 26, 2014, the trial court issued a judgment entry awarding appellees $6,482.50 in attorney fees.

**{¶15}** Appellant appeals and assigns the following as error:

**{¶16}** "I. THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING MR. MORGAN LEAVE TO FILE A COUNTERCLAIM.

**{¶17}** "II. THE JURY VERDICT IN FAVOR OF MR. MORGAN AND MRS. MORGAN WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."

I.

**{¶18}** Appellant first argues the trial court abused its discretion in granting Gary's motion for leave to file a counterclaim.  In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶19}** A trial court has the discretion in determining whether to grant a motion for leave to amend a pleading, but the Civil Rules favor a liberal amendment policy. *Hoover v. Sumlin*, 12 Ohio St.3d 1, 465 N.E.2d 377 (1984).  Civil Rule 15(A) and Civil Rule 13(F) direct courts to grant leave freely when "justice so requires."  Accordingly, a motion for leave to amend should be granted unless the court finds bad faith, undue

delay, or undue prejudice to the opposing party. *Id.*; *Wesbanco Bank, Inc. v. Hays*, 5th Dist. Guernsey Co. No. 2006-CA-23, 2007-Ohio-1825.

{¶20} Appellant argues there is undue delay in this case because the discovery deadlines had passed and a trial date had been set. Appellant further contends the trial court, during a pre-trial, denied Gary's motion to file a counterclaim and then later issued an order allowing the counterclaim.

{¶21} In this case, Gary's counterclaim was filed at the same time as the counterclaim of new party Elizabeth. The counterclaims raised similar issues. Further, after Elizabeth filed her answer and counterclaim and Gary filed his counterclaim, the trial court continued the trial date to approximately five months later than it was originally scheduled. While appellant argues that he was prevented from doing discovery on Gary's counterclaim during this five month period, appellant never moved to re-open discovery or conduct additional discovery during this time. Thus, there is no indication that appellant could not adequately prepare to litigate the counterclaim of Gary against him.

{¶22} As to the trial court's conversion during the pre-trial, we first note that it is well-settled that a court of record speaks only through its journal entries and no entry regarding a motion to file counterclaim was issued by the trial court at the conclusion of the pre-trial. See *Schenley v. Kauth*, 160 Ohio St. 109, 113 N.E.2d 625 (1953). Further, while the trial court indicated that it didn't "have to grant leave for that," the trial court continued, stating that "if you want to seek out leave to file an amended answer and assert a counterclaim, I guess that you can file that motion, I don't know what my

take on that would be at this point * * *." Thus, the trial court did not preclude Gary from making such a motion.

{¶23} Finally, appellant argues Gary's motion was made in bad faith because it alleged that the counterclaim was compulsory, and it was not. We first note that appellant failed to raise the issue of bad faith before the trial court and thus it is waived for purposes of this appeal. *FirstMerit Bank, N.A. v. Shaheen*, 5th Dist. Stark No. 2011CA00079, 2011-Ohio-6146. Further, the trial court did not indicate in its entry that it was granting the motion for leave to file the counterclaim due to the counterclaim's characterization as compulsory or non-compulsory.

{¶24} We find the trial court did not abuse its discretion in permitting Gary to file his counterclaim. Given the liberal amendment policy, lack of prejudice to appellant, and the lack of bad faith or undue delay, the trial court's decision to grant the motion to amend was not arbitrary, unreasonable, or unconscionable. Appellant's first assignment of error is overruled.

II.

{¶25} Appellant argues the jury's verdict with regard to appellees' counterclaims was against the manifest weight and sufficiency of the evidence. In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E. 2d 541 (1997) is also applicable in civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. A

reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id;* see also *Sheet Metal Workers Local Union No. 33 v. Sutton*, 5th Dist. Stark No. 2011 CA 00262, 2012-Ohio-3549. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶26} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. *Markel v. Wright*, 5th Dist. Coshocton No. 2013CA0004, 2013-Ohio-5274. Further, "an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusion of law." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Id.* Accordingly, a trial court may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).

{¶27} In this case, appellees advanced three theories of recovery: trespass, nuisance, and invasion of privacy. The jury verdict forms both parties agreed to submit to the jury did not differentiate between these claims and the jury found in favor of appellees' "on one or more of their claims."

{¶28} Appellant argues there is no evidence to show the conduct of appellant proximately caused any injury. However, Gary testified that appellant wrote "Keep Out Boy" in bright orange spray paint on a shed seen directly from Gary's home, wrote "No Gary's Allowed" on his hog barn, put 60-70 ribbons on the property line, pulled out fence posts on the property line, and pulled a gun on him while firing a warning shot at appellees' goats. Further, Gary testified that, while in the easement, appellant stops and stares at Gary's family, spins his tires, revs his engine, and drives his golf cart up and down the property line. Gary stated that these actions of appellant make him uncomfortable and that he has missed work, has a reduced social life, has no privacy in his house, feels like he is being constantly harassed by appellant, and is uncomfortable with his wife and kids being alone in the house.

{¶29} Elizabeth testified that appellant revs his tractor at night, shines flashlights onto their property, stares at them with binoculars, and drives his golf cart back and forth on the property line. Further, that in the easement, appellant takes multiple photographs, revs his engine, and drives fast and slow. Elizabeth testified that she is scared on a daily basis for her and her children, is very upset about the situation, and cannot use the property as intended. While she used to enjoy being outside with her children and doing garden and yard work, she now does not and cannot let her children go play. She does not go outside when she is home, does not have many friends over,

and does not go on vacation because she is afraid to leave the house unattended. Elizabeth testified that these concerns are based upon everything going on with appellant, which she stated has escalated in the past two years.

{¶30} Based upon the foregoing testimony, we find there is competent and credible evidence to support the finding of the jury that appellant proximately caused appellees' injury.

{¶31} Further, appellant contends that there was no evidence submitted of appellees' doctor visits, medication, or medical expenses to prove the amount of damages.

{¶32} In a nuisance action, there is no precise rule for ascertaining damages and it is within the discretion of the trier of fact to determine what sum a complaining party should receive for discomfort and annoyance suffered from the nuisance. *Gulley v. Markey*, 5th Dist. Holmes No. 01COA030, 2003-Ohio-335; *Frey v. Queen City Paper Co.*, 79 Ohio App. 64, 66 N.E.2d 252 (2nd Dist. 1946).

{¶33} It is not necessary that the property owners be driven from their dwelling before an award of damages for nuisance is justified. *Brown v. Scioto County Board of Commissioners*, 87 Ohio App.3d 704, 622 N.E.2d 1153 (4th Dist. 1993). Damages may be awarded simply for discomfort or annoyance in the use of the property; the discomfort does not need to be constant, the value of the property depreciated, the health of the occupants compromised, or the rental value of the property impaired. *Frey v. Queen City Paper Co.*, 79 Ohio App. 64, 66 N.E.2d 252 (2nd Dist. 1946). The factual question is whether there is an "appreciable, substantial, tangible injury resulting in actual, material, and physical discomfort" during the reasonable use of the property.

*Rautsaw v. Clark*, 22 Ohio App.3d 20, 488 N.E.2d 243 (12th Dist. 1985). Evidence of pecuniary loss is not required to recover damages for discomfort and annoyance caused by a nuisance. *Bullock v. Oles*, 7th Dist. Mahoning No. 99 CA 223, 2001-Ohio-3220. Thus, because the assessment of damages lies within the province of the trier of fact's assessment of damages, a reviewing court should only interfere if an award is clearly excessive or influenced by passion or prejudice. *Id.*; *Cox v. Cox*, 12th Dist. Butler No. CA 2008-06-077, 2009-Ohio-1446.

**{¶34}** In this case, Gary stated that the actions of appellant make him uncomfortable and that he has missed work, has a reduced social life, has no privacy in his house, feels like he is being constantly harassed by appellant, and is uncomfortable with his wife and kids being alone in the house. Elizabeth testified that she is scared on a daily basis for her and her children and is very upset about the situation. Further, that the actions of appellant have virtually ended her family's outdoor activities. Elizabeth stated that Gary used to be active and now just wants to sleep, stay inside, and not go anywhere. She testified that the situation with appellant has put a financial strain on her marriage, emotional strain on her, and affected her daily routine as her sleep has been affected and she does not feel safe in her home. Elizabeth testified that she has suffered mental harm and anguish.

**{¶35}** There is no precise rule for ascertaining damages. It is within the discretion of the trier-of-fact to determine what sum of money appellees should receive for their discomfort and annoyance. Upon our review of the record and given the foregoing testimony, there is nothing on the record that would imply passion or prejudice of the jury. Further, there is nothing to imply that the jury was misdirected or lost its way

in determining the award.　See *Gulley v. Markey*, 5th Dist. Holmes No. 01COA030, 2003-Ohio-335.

**{¶36}** Appellant's second assignment of error is overruled.

**{¶37}** Based upon the foregoing, we overrule appellant's assignments of error. The jury verdict with regards to appellees' counterclaims and the trial court's judgment entry granting leave to file counterclaim are affirmed.

By Gwin, P.J.,

Wise, J., and

Delaney, J., concur