[Cite as *Rosalind Holmes v. Cobblestone Grove*, 2017-Ohio-55.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| ROSALIND HOLMES, | : | CASE NO.   CA2016-04-075 |
| Appellant, | : | |
| | : | O P I N I O N<br>1/9/2017 |
| - vs - | : | |
| | : | |
| COBBLESTONE GROVE, et al. | : | |
| Appellees. | : | |


CIVIL APPEAL FROM FAIRFIELD MUNICIPAL COURT
Case No. 2015SCI00087


Rosalind Holmes, 1013 Springwater Court, Cincinnati, Ohio 45215, appellant, pro se

David D. Donnett, 1212 Sycamore Street, Suite 36, Cincinnati, Ohio 45202, for appellee


**M. POWELL, P.J.**

{¶ 1}   Plaintiff-appellant, Rosalind Holmes, appeals a decision of the Fairfield Municipal Court granting a $659 judgment in favor of her former landlord, defendant-appellee, Cobblestone Grove Apartments, LLC ("Cobblestone").

{¶ 2}   In July 2015, Holmes entered into a written, one-year lease agreement with Cobblestone to rent an apartment.  The rent was $800 per month.  Prior to this lease, she had lived in the apartment for five years.  In the late evening hours of August 4, 2015, or the early morning hours of August 5, 2015, Holmes discovered a "massive" water leak and

flooding in her kitchen and living areas. Holmes notified Cobblestone's maintenance person of the problem around 1:00 a.m. The maintenance person arrived at the apartment at approximately 3:00 a.m. and directed Holmes to vacate the apartment due to the flooding. Holmes stayed with a friend. Holmes returned to her apartment on August 5, 2015, and discovered that her furnishings had been pushed to one side of the apartment. The leak had been repaired.

{¶ 3} Subsequently, Cobblestone arranged for extraction of the water from the apartment, testing for mold and mildew, and completion of the plumbing repairs. With the exception of dry wall repair and additional testing for mold and mildew, the repair work was completed by August 12, 2015. Cobblestone contracted with a second contractor because of mold concerns. By letter dated August 14, 2015, Cobblestone notified Holmes that fans would be set up in the apartment for the weekend for the purpose of fully drying the apartment and that they would be removed on August 17, 2015. The letter further stated that Cobblestone would be responsible for any extra electric charges Holmes may incur due to the usage of the fans. The second contractor made two small holes into the walls to put air down into them and used a dehumidifier and two carpet fans.

{¶ 4} On August 9, 2015, Holmes sent an email to the property manager, stating the apartment was not suitable to live in as she could not cook, watch television, or relax, and requesting a suitable place to live until all repairs were done.

{¶ 5} By letter dated August 21, 2015, Holmes through her attorney notified Cobblestone she was terminating her lease due to unsuitable living conditions, and gave her 30-day notice of intent to vacate. The letter explained that there were holes in the bedroom and kitchen walls, the carpets had not been cleaned, several fans and humidifiers had been running constantly causing an increase in her electric bill, and her dining room furniture was still "shoved into her living room." Holmes turned in her apartment keys to Cobblestone's

office on September 30, 2015. Cobblestone re-leased the apartment effective October 31, 2015. Holmes submitted a claim for her personal property damage upon her renter's insurance and was reimbursed except for depreciation and a $250 deductible.

{¶ 6} On September 11, 2015, Holmes filed a small claims complaint in the municipal court against Cobblestone, seeking $2,500 in damages. The matter proceeded to a hearing before a magistrate on November 4, 2015. On the day of the hearing, Cobblestone filed its answer and amended counterclaim, seeking $1,700 in damages. Holmes objected to the amended counterclaim, arguing it was untimely filed. The magistrate offered to continue the hearing, which Holmes refused, and the magistrate proceeded with the hearing. Holmes and two of her friends testified on Holmes' behalf. Todd Hignite, a regional manager for Cobblestone, testified on behalf of the company. Holmes stated she was seeking $2,932.32 in damages; Hignite stated Cobblestone was seeking $1,764.66 in damages.

{¶ 7} At the hearing, Hignite testified that while some dry wall repairs remained, the apartment was fully habitable by August 14, 2015. Certainly, the apartment was fully habitable on September 30, 2015, when Holmes turned in her apartment keys. Hignite admitted he did not walk through the apartment after the repairs were done. Hignite personally offered to move Holmes to another apartment on August 14, 2015. Holmes declined the offer because Cobblestone could not guarantee the alternate apartment would be free of plumbing issues.

{¶ 8} Holmes denied the apartment was fully habitable by August 14, 2015, or September 30, 2015. While the leak had been fixed, there was mold and mildew, there was "drywall everywhere, sanded down all over the kitchen area," she could not cook in the kitchen, and the carpets had not been cleaned. One of Holmes' witnesses testified that on the day he helped her move out, "the living conditions were pretty bad," there was a bad smell "like really bad mold," and the drywall repairs were poorly done. Holmes also denied

she was offered an alternate apartment to live in. Rather, Cobblestone gave her "the runaround about another suitable place" and told her she did not need an alternative apartment as the leak had been fixed.

{¶ 9} On January 6, 2016, the magistrate found that Cobblestone had fulfilled its obligations as a landlord under R.C. 5321.04 and 5321.07, and that it was entitled to the October rent in the amount of $800. The magistrate further found that Holmes failed to meet her burden of proof and that she was only entitled to be reimbursed for the additional electric charges related to the repairs in the amount of $141.36. Consequently, the magistrate recommended that a rounded $659 judgment be granted in favor of Cobblestone. Holmes filed objections to the magistrate's decision, which were overruled by the municipal court.

{¶ 10} Holmes now appeals, raising two assignments of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING APPELLEES FILING OF AN UNTIMELY COUNTERCLAIM WITHOUT LEAVE AND GRANTING JUDGMENT IN FAVOR OF THE APPELLEES WHICH VIOLATED R.C. 1925.02(C) AND CIV.R. 13(F) AND 7(B)(1).

{¶ 13} Holmes argues the municipal court abused its discretion when it allowed Cobblestone to file its untimely counterclaim on the day of the hearing. Holmes asserts the counterclaim was filed in violation of Civ.R. 7(B)(1), Civ.R. 13(F), and R.C. 1925.02(C).

{¶ 14} Pursuant to R.C.1925.02(A), a small claims division of a municipal court has jurisdiction in civil actions for the recovery of amounts not exceeding $3,000, exclusive of interest and costs. R.C.1925.02(C) provides that any person who files a counterclaim "shall file it with the small claims division and serve it on all other parties at least seven days prior to the date of the trial of the plaintiff's claim in the original action." The record shows that the summons advised Cobblestone, in compliance with R.C. 1925.05, that "If you believe you

have a claim against the plaintiff, you must file a counterclaim with the court and must serve the plaintiff and all other parties with a copy of the counterclaim at least seven days prior to the date of the trial of the plaintiff's claim."

{¶ 15} Civ.R. 7(B)(1) provides that "[a]n application to the court for an order shall be by motion which, unless made during a hearing or a trial, shall be made in writing. A motion, whether written or oral, shall state with particularity the grounds therefore, and shall set forth the relief or order sought." Civ.R. 13(F) provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment."

{¶ 16} It is within a trial court's discretion whether a party may, under appropriate circumstances, amend a responsive pleading to include a counterclaim, and the court's decision will not be disturbed absent a showing of an abuse of that discretion. *Chase Manhattan Mtge. Corp. v. Urquhart*, 12th Dist. Butler Nos. CA2004-04-098 and CA2004-10-271, 2005-Ohio-4627, ¶ 17. The Civil Rules favor a liberal amendment policy. *See Amend v. Morgan*, 5th Dist. Ashland No. 14-COA-041, 2015-Ohio-3185.

{¶ 17} We find no abuse of discretion by the municipal court in allowing Cobblestone to file its untimely counterclaim on the day of the hearing. In his decision, the magistrate stated that

> Counsel for Defendant Cobblestone Grove Apartments, LLC moved the Court to accept its Answer and Amended Counterclaim for $1,700.00 filed on November 4, 2015. Plaintiff Rosalind Holmes moved to strike (objected to) the counterclaim as untimely filed. As stated at the hearing, the Court permitted Defendant to present its amended counterclaim. The Court permitted Plaintiff to continue the hearing to a later date to provide her an opportunity to review and prepare for the counterclaim. Plaintiff wanted her complaint heard that evening on November 4 and did not want the hearing continued to a later date. Plaintiff made a continuing objection to the Court permitting Defendant to present its amended counterclaim and the Court made clear her option was to continue the case to another date to allow her time to prepare to respond or go

forward on both her complaint and her defenses to the amended counterclaim. (The discussion on these motions may have been earlier in the evening or immediately preceding the Court commencing the hearing. The Court makes this note for purposes of facilitating the clerk reviewing the recorded record, if necessary.)

Applicable procedural rules permit a court discretion whether to allow parties to a civil action to add any related claims or counterclaims to the subject small claims civil action. The applicable rules are Rules of Practice and Procedure for the Fairfield Municipal Court, Rules 21 and 28[.] Ohio Civil Rule 15 has some applicability to small claims court but with limitations due to the format of small claims court. See Civil Rule 1(C)(4)[.]

{¶ 18} Subsequently, following Holmes' objections to his decision, the magistrate issued an entry clarifying his decision:

Plaintiff Rosalind Holmes filed an objection and the judge will decide the objection. The magistrate had no ex parte communications with any person in this case. The magistrate was not sure if the discussion on the record with all parties occurred earlier in the evening docket or immediately before hearing this case, is what the magistrate was trying to explain in the 1/16/16 decision.

{¶ 19} As the magistrate's decision and subsequent entry indicate, Cobblestone orally requested leave of court to file its untimely counterclaim on November 4, 2015, before the hearing on Holmes' claims began. The magistrate offered to continue the hearing so that Holmes could prepare a defense to the counterclaim. Holmes refused a continuance and the magistrate granted Cobblestone's motion for leave to file its untimely counterclaim. Thus, there was discussion on the record of the propriety of Cobblestone's counterclaim.

{¶ 20} As the appellant, Holmes bears the burden to show error by reference to matters in the record, and the responsibility to provide this court with a record of the facts, testimony, and evidence in support of her assignment of error. *Pedra Properties, L.L.C. v. Justmann*, 8th Dist. Cuyahoga No. 102909, 2015-Ohio-5427, ¶15. While Holmes provided a transcript of the hearing itself, she did not provide a transcript of the discussion related to the counterclaim or an appropriate substitute for the transcript under App.R. 9(C) or (D), and the

transcript of the hearing does not support her argument. When the record is incomplete as to assigned errors, "the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).

{¶ 21} We are mindful that throughout this process, Holmes has represented herself. However, pro se litigants are held to the same standard as litigants who are represented by counsel. *Sparks v. Sparks*, 12th Dist. Warren No. CA2015-10-095, 2016-Ohio-2896, ¶ 6, citing *State ex rel. Leon v. Cuyahoga Cty. Court of Common Pleas,* 123 Ohio St.3d 124, 2009-Ohio-4688, ¶ 1. As a result, pro se litigants are presumed to have knowledge of the law and correct legal procedures so that they remain subject to the same rules and procedures to which represented litigants are bound. *Sparks* at ¶ 6. In other words, "[p]ro se litigants are not to be accorded greater rights and must accept the results of their own mistakes and errors, including those related to correct legal procedure." *Cox v. Zimmerman*, 12th Dist. Clermont No. CA2011-03-022, 2012-Ohio-226, ¶ 21.

{¶ 22} The municipal court did not abuse its discretion in allowing Cobblestone to file its untimely counterclaim on the day of the hearing. Holmes' first assignment of error is accordingly overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE AND NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 25} Holmes argues that the $659 judgment in favor of Cobblestone is not supported by sufficient evidence and is against the manifest weight of the evidence because Cobblestone failed to prove that: the repair work was completed, there was no mold as a result of the leak, and she was offered another apartment. Holmes ostensibly challenges the municipal court's finding that Cobblestone fulfilled its obligations as a landlord under R.C.

5321.04 and 5321.07, and that her apartment was habitable by August 12, 2015.

{¶ 26} The municipal court granted judgment in favor of Cobblestone, finding that Holmes was not constructively evicted and was not entitled to terminate her lease because Cobblestone had stopped the water leak within a few hours of being notified by Holmes, had repaired the damage caused by the water leak in the days following, and thus had timely made repairs. The court further found credible Hignite's testimony that the apartment was habitable within ten days of the water leak.

{¶ 27} An appellate court's function in reviewing the sufficiency of the evidence supporting a judgment in a civil case is to examine all of the evidence admitted at trial and to then determine whether there is "some competent and credible evidence going to all essential elements of the case." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984); *Schnecker v. Schindler*, 12th Dist. Warren No. CA96-10-100, 1997 WL 292353, *1 (June 2, 1997).

{¶ 28} A manifest weight challenge in a civil case concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. In a manifest weight analysis, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Id* at ¶ 20. In reviewing a bench trial, an appellate court will uphold the trial court's determination unless it appears that the record is such that no reasonable person could have concluded as the trial court did. *Garringer v. Gen. Motors Acceptance Corp.*, 12th Dist. Fayette No. CA92-06-011, 1992 WL 368717, *2 (Dec. 14, 1992); *Schroeder v. Roger Foos Ins. Agency*, 6th Dist. Lucas No. L-06-1379, 2007-Ohio-5990.

**{¶ 29}** Ohio's landlord-tenant statute, R.C. Chapter 5321, imposes duties on landlords and provides tenants with leverage to redress breaches of those duties. *Miller v. Ritchie*, 45 Ohio St.3d 222, 224 (1989). R.C. 5321.04(A)(2) requires that a landlord "[m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." R.C. 5321.07(A) provides that if a landlord fails to fulfill any obligation imposed under R.C. 5321.04, or if the conditions of the residential premises are such that the tenant reasonably believes that a landlord has failed to fulfill those obligations, the tenant may give notice in writing to the landlord, specifying the acts, omissions, or code violations that constitute noncompliance. If the landlord fails to maintain the rental property in accordance with statutory or contractual obligations, and the tenant is current in rent payments and notified the landlord in writing of the violations, R.C. 5321.07(B)(3) allows the tenant to terminate the rental agreement. *Miller* at 224.

**{¶ 30}** "It is not a landlord's failure to fix any problem or to remedy any condition 'within a reasonable time * * * or within thirty days, whichever is sooner' that gives a tenant a right to terminate his lease under R.C. 5321.07(B)." *Pedra*, 2015-Ohio-5427 at ¶ 19. Rather, the remedies available under R.C. 5321.07(B) require a tenant to show that the landlord violated (1) the lease agreement, (2) a building code that could materially affect health and safety, or, as applicable here, (3) an obligation imposed by R.C. 5321.04. *Id.* A tenant must show that a condition exists that renders the premises unfit or uninhabitable in order to terminate a lease based on R.C. 5321.04(A)(2). *Id.* at ¶ 20.

**{¶ 31}** Upon a thorough review of the record, we conclude that the municipal court's finding the apartment was habitable by August 14, 2015, and thus, that Cobblestone had made the premises habitable and safe for Holmes as required under R.C. 5321.04 and 5321.07, is against the manifest weight of the evidence.

**{¶ 32}** The record indicates that on the night of the leak, Holmes was forced from her

- 9 -

home because of water flooding her kitchen and living areas. Thereafter, Homes endured repeated and continuing intrusions, which spanned several weeks, arising from a chain of events put in motion by the original leak.

{¶ 33} While the leak itself was repaired within a day, Holmes testified how difficult it was to live in her home once the repairs were ongoing. Describing Holmes' living conditions on the day he helped Holmes move out, one of Holmes' witnesses testified that the drywall debris was "all over the furniture, the tables, the counter," and that the drywall "sand" was "all over the house, on the couch, all over the place on the floors." Holmes' witness further testified that Holmes' apartment was "literally like an unfinished job and the smell was like so bad, like really mold like really bad mold because of the water damage * * * so I told her that she shouldn't be staying in there because of the mold, and it was pretty bad." Similarly, Holmes testified "there was mold and mildew grown" in her apartment after the leak was repaired.

{¶ 34} Holmes further testified that in addition to the mold, her life was disrupted by the ongoing repairs as

> all of my furnishings, were all shoved into my living room and left there. They did not clean the carpets, they did not do anything else, they had drywall everywhere, sanded down all over the kitchen area, they put all the stuff, all everywhere, where I can't even cook in my kitchen * * * I can't even cook in my kitchen, it's not a suitable place to live.

{¶ 35} Photographs admitted during the hearing show that large dryers and dehumidifiers were in Holmes' apartment in areas where she should have been able to rest, relax, and enjoy her home, and that there were large holes in the drywall of her apartment. Holmes testified that the fans and dehumidifiers ran in her home for "almost three weeks." Machinery was also crowded on Holmes' kitchen counters and items were moved from the cabinets and crowded on the counters as well. Holmes explained her reason for leaving her apartment, and stated "it was mold, mildew, I'm not going to sit in there and live and get sick."

{¶ 36} While the magistrate was "persuaded by Landlord's testimony that the apartment was habitable on August 12," and thus, that the carpets were cleaned and repairs were completed in a reasonable time, we note that Hignite did not submit any evidence in support of his testimony, and in fact admitted he never observed the condition of the apartment before Holmes moved out. During his testimony, Hignite referenced invoices Cobblestone received and paid for work done in Holmes' apartment as evidence carpets had been cleaned and repairs had been completed. However, Hignite clearly admitted that the repairs were only done "to the best of my knowledge," and that he "did not walk the apartment and personally see it." The *only* evidence Hignite offered was his statement that there were paid invoices. Yet, he had no personal knowledge to establish that the work was actually completed or whether the repairs returned the apartment to a fit and habitable condition as required under R.C. 5321.04(A)(2).

{¶ 37} In light of the foregoing, we find that the record is such that no reasonable person could conclude, as the municipal court did, that Holmes' apartment was fit and habitable by August 14, 2015, or September 30, 2015. We therefore conclude that the municipal court's finding that Holmes failed to prove her apartment was uninhabitable is against the manifest weight of the evidence. Accordingly, we sustain Holmes' second assignment of error and pursuant to App.R. 12(C), reverse the judgment of the municipal court and remand the case to the municipal court for further proceedings.

{¶ 38} Judgment affirmed in part, reversed in part, and cause remanded.


S. POWELL and PIPER, JJ., concur.