KLAR, APPELLANT, *v.* HOOPINGARNER ET AL., APPELLEES.

(Decided April 25, 1939.)

*Mr. P. S. Olmstead* and *Mr. Robert R. Stephenson,* for appellant.

*Messrs. Bowers, Stafford & Bowers,* for Blue Bell Coal Mines, Limited, a partnership, appellee.

BY THE COURT: Plaintiff commenced this action in the trial court and therein sought to procure a reformation of his deed and a quieting of his title as against a subsequent grantee of his grantor. At the conclusion of plaintiff's case upon motion of defending grantee, the Blue Bell Coal Mines, Limited, a partnership, the trial court denied plaintiff the relief prayed for upon the theory that he was estopped by laches and that his evidence was insufficient either in law or equity to entitle plaintiff to relief. From the judgment entered plaintiff appeals to this court on questions of law and fact, and the cause is herein tried *de novo,* upon the record made below, supplemented only by a map of the premises involved and contiguous territory.

We are therefore confronted with the same questions which engaged the trial court, that is the sufficiency of plaintiff's evidence, the matter of laches, and whether reformation may be had against a subsequent grantee of the residue of his grantor's lands. The pertinent facts are as follows:

In 1930, Klar purchased a tract of 13.505 acres in the southeast corner of the Hoopingarner lands, the south line of which was the section and township line. The lands to the east belonged to one Gordon. The tract is a five-sided figure. Near the land's southeast corner a lane proceeds north from the south line a distance of 126.9 feet to the lands of Gordon, which cuts off a triangular parcel which was cleared land. The tract conveyed or intended to be conveyed was

to have its south boundary on the township line, the Gordon line was to be the tract's east line, and the 126.9 ft. course along the lane was to be the tract's fifth side. The tract is described as a place of scenic beauty known as "The Rock Woods." No cleared or cultivated lands were to be included in the purchase. Hence the exclusion of the triangular portion east of the lane. The tract actually described and conveyed is a five-sided one of like courses and distances, except that it is elevated north and shifted westerly, so that its south line is 254.9 feet north of the township and section line. The parcel of land in dispute is that which lies south and east of the tract as conveyed, save the triangular parcel east of the lane.

It appears that the Hoopingarners acted through their agent, Lash, who conducted all negotiations. It was agreed that Klar would have the tract surveyed. The engineer employed one Bell, assisted by Klar, who surveyed the tract. In the course thereof, they followed the township line, the course of the lane and the Gordon line; but through inadvertance the description as prepared by Bell elevated the tract north and west as previously noted. Klar procured the description from Bell and conveyed it to Lash, who prepared the deed and procured its execution by Hoopingarners and its delivery to Klar.

Klar took possession, and shortly thereafter recorded his deed, built a summer home, erected ornamental pillars at his driveway entrance, planted some shrubbery, leased a portion of land in the quarter section south of the township line and constructed a fish pond which extended 40 to 60 feet south of the township line, and proceeded to enjoy his purchase. The house as built is located about 60 feet north of the township line in the disputed parcel. It also appears that in 1931 upon the grantor's request, conveyed through Lash, Klar was required to and did repair

the line fence at or near what was to have been his southwest corner.

It also appears that in 1934, Lash told Klar that there was an error in the description of his tract; to which he replied that such could not be true, for he had helped survey it.

In 1936, the Hoopingarners, acting through their agent, Lash, sold and conveyed the balance of the Hoopingarner acreage to the appellee partnership. The deed described the farm as a whole, saving and excepting the Klar tract. It is evidenced that Lash advised the acting partner that Klar owned the woods tract in the southeast corner of the farm. All of this evidence is undisputed. Without doubt it establishes by clear proof that a mutual mistake had been made and as against Klar's grantors, he would have been entitled to reformation of his deed.

The appellee answered certain interrogatories, one of which discloses that before its purchase it "had seen the houses but did not know it was on excepted part." Kane, who seems to have been the active participating partner was called for cross-examination. He testified he saw the house and an old road just north of the fish pond. He later denied that he saw the pond. He further testified that he traversed the parcel in dispute from east to west. This he later denied and said he went from west to east but not to the southeast corner of the Hoopingarner farm. He estimated the house to have been 126 feet north of the township line. It also appears from the partner's evidence that within thirteen days after purchase, the partnership had demanded a substantial sum of Klar for the disputed parcel. He also said the appellee relied solely upon the public record and abstract furnished it. Lash also testified that he told Kane that Klar owned the woods portion in the southeast corner of the farm. So stands the evidence.

The appellee pleads and argues that plaintiff, by virtue of his knowledge brought to him by Lash in 1934, is estopped by his procrastination from now seeking a correction of his boundary. Such a plea partakes of the nature of a demurrer to plaintiff's evidence or a confession and avoidance. It assumes theoretically that if even the proven facts be true one may not now be heard to assert them because of his laches. In *Chase* v. *Chase*, 20 R. I., 202, 37 A., 804, it is correctly held that:

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law."

The delay which here is claimed to have worked a disadvantage is of course in plaintiff's impromptitude in 1934. In other words had plaintiff then corrected his record title, upon which, so Kane says, his firm solely relied, it would not have been led to its detriment. The fallacy in this argument however, reposes in the shunned facts that Klar was in possession of the questioned territory, and that Kane had been so advised by Lash and had observed Klar's improvements. Even though Kane knew these things he says he did not know where the township line was. He seemingly made no effort to find out.

The equitable doctrine of laches has its limitation, one of which is of ancient vintage found stated in 4 Pomeroy's Equity Jurisprudence (4 Ed.), 3444, Section 1454:

"A party in possession of land who resorts to a court of equity to settle a question of title is not chargeable with laches, no matter how long his delay. Such a party is at liberty to wait until his title is attacked before he is obliged to act."

We see its frequent application in suits to quiet

title. Resort to 16 Ohio Jurisprudence, 270, Section 114, reveals that trial courts in this state have applied the exception to the rule in cases where one is in possession of land. *Stark, Exr.,* v. *Turner,* 23 N. P. (N. S.), 313, affirmed without report by a branch of this court, and motion to certify overruled, is an example thereof. Recognition of the exception to the equitable rule that laches bars relief is not confined exclusively to courts of chancery, for Section 11236, General Code, which concludes the chapter of the statutes devoted to the limitation of actions, prescribes that:

"The provisions of this chapter, respecting lapse of time as a bar to suit, shall not apply * * * to an action by a vendee of real property, in possession thereof, to obtain a conveyance of it."

This section is legally declaratory of the state's public policy. We are therefore of opinion that the defense of laches is not applicable to this unit. It was so held in a like suit found in *Knaggs* v. *Cleveland-Cliffs Iron Co.,* 287 F., 314.

From the facts herein related it is self-evident that the appellee was not an innocent purchaser. When the partner, Kane, found Klar in possession, he and his partnership were not entitled to rely exclusively upon the public record. He had opportunity to inquire of Klar upon what right his occupancy rested. In fact he was advised in part by Lash. Had he then been vigilant in the protection of his firm, and actuated by no other motive, this suit would not have been necessary.

Can the fact that appellee is the subsequent grantee of the residue of the farm from their common grantor be of avail? We think not. The rule is as found in 102 A. L. R., 833:

"The fact that one is in open, notorious, visible, and exclusive possession of land supposed to have been

conveyed to him by deed constitutes notice of his title t< subsequent purchasers * * *, although his deed contains a misdescription of the land, and reformation of his deed will be granted as against such subsequent purchasers * * *."

We choose to cite but three authorities in support thereof. None should be necessary. *Deubel* v. *Dearwester,* 36 Ohio App., 60, 172 N. E., 640; *Miles* v. *Craig,* 147 Wash., 530, 266 P., 182; and *Thalheimer* v. *Lockert,* 76 Ark., 25, 88 S. W., 591.

Is the evidence of plaintiff sufficient? Is it clear and convincing? We answer both queries in the affirmative. Plaintiff is entitled to a decree as prayed for, which is forthwith entered.

*Decree accordingly.*

SHERICK, P. J., LEMERT and MONTGOMERY, JJ., concur.