[Cite as *Markel v. Wright*, 2013-Ohio-5274.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BROOKE A. MARKEL | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2013CA0004 |
| | : | |
| STEPHEN L. WRIGHT AND | : | |
| KATHRYN E. STROUP WRIGHT | | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Coshocton County
Court of Common Pleas, Case No. 10
CI 0696

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: November 20, 2013

APPEARANCES:

For Plaintiff-Appellant:             For Defendants-Appellees:

DANIEL S. WHITE             PAUL R. SCHERBEL
34 Parmelee Drive             BENJAMIN E. HALL
Hudson, OH 44236             240 S. Fourth St., P.O. Box 880
                                                  Coshocton, OH 43812

*Delaney, J.*

{¶1} Plaintiff-Appellant Brooke A. Markel appeals from the January 10, 2013 Judgment Entry of the Coshocton County Court of Common Pleas finding in favor of Defendants-Appellees Stephen L. Wright and Kathryn Stroup Wright on all claims.

## FACTS AND PROCEDURAL HISTORY

{¶2} The following facts are adduced from the bench trial held on August 23, 2012 before the Coshocton County Court of Common Pleas.

{¶3} The residence at 1555 Hay Avenue, Coshocton, Ohio is approximately 45 to 50 years old. Appellees Stephen and Kathryn Wright purchased the residence in 2000. Photos of the exterior submitted by appellees depict a well-kept, one-story, sided home with a roofed cement front porch.

*Appellees Deal with a Wet Basement*

{¶4} Appellees acknowledged issues with water intrusion during their time living in the home. Portions of the basement were black with mold when they moved in, especially the area under the cement porch. Appellees cleaned the mold with bleach, painted it with waterproof paint, and continually ran a dehumidifier. These remedial actions were taken in 2001; appellees testified they did not have problems with mold or water intrusion after that. They emptied the dehumidifier frequently but were able to use the basement for storage of clothing and other items. Appellee Mary Wright testified she emptied the dehumidifier every 24 to 36 hours. One room in the basement is carpeted; appellee Stephen Wright testified he sometimes slept there and stored paperwork in the room.

{¶5}   Between 2000 and 2009, appellees made various cosmetic improvements to the residence.  They decided to try to sell the home in 2009 because they wanted to downsize into a single-story residence due to health issues.  Realtor Sue Wright listed the home and described its condition as "immaculate."  She did not observe any problems with mold or water in the basement, and she did not smell fresh paint in the basement or notice any other efforts to conceal water issues.

*Appellant Decides to Buy the Home*

{¶6}   Appellant testified she entered the residence twice before buying it.  The first time, appellant went in with her father and they looked at the basement.  The second time, appellant looked at the residence with her mother and her realtor.  The only concern about the physical condition of the residence raised before the purchase involved wiring in the basement.

{¶7}   A question of water intrusion did arise during the purchase process.  On June 1, 2009, appellees entered a real estate purchase contract with appellant.  Paragraph 1.2 of the contract requires "[s]eller to complete Section D, Page 2 of Residential Property Disclosure Form to Buyer's satisfaction."  Appellant testified this contingency was put in the purchase agreement because she would not buy the home until she was satisfied with the disclosure regarding water intrusion.

*Residential Property Disclosure Forms*

{¶8}   Three residential property disclosure forms exist and were entered as exhibits by appellant at trial.  Page 2, Section D of each form states, "Do you know of any previous or current water leakage, water accumulation, excess moisture, or other defects to the property including, but not limited to, any area below grade, basement, or

crawl space?"  The owner is to circle "Yes" or "No," and the form further states, "If "yes," please describe and indicate any repairs completed."

{¶9}  On appellant's Exhibit A-1, Page 2, Section D is blank but starred. Appellees did not check either "Yes" or "No."  Appellee Kathryn Wright testified this question was marked because she wanted to ask her realtor how to best answer it because there had once been a problem but it was now corrected.  The form is initialed by appellees and appellant.

{¶10} The second, appellant's Exhibit A-2, also dated March 6, 2009, states "Moisture on One Wall – Dried, Sealed, New Pitch on Roof – No More Moisture."  This form, too, is initialed by appellees and appellant and indeed appears identical to appellant's Exhibit A-1 with the exception of the water intrusion portion.

{¶11} The third, appellant's Exhibit A-3, is initialed by appellees only, was never shown to appellant, and states, "Moisture Seepage on One Basement Wall – Wall Paint Coating – Roof Pitch Change – No Water Since."

{¶12} Appellant testified the language requiring appellees to answer the question about water intrusion was stricken from the purchase agreement because appellees answered the question to her satisfaction.  Appellant acknowledged she was advised by appellees there was moisture in the basement.  She also acknowledged she did not have the home inspected although she was encouraged to do so.

*Appellant Develops Problems with a Wet Basement*

{¶13} Appellant acknowledged appellees left the dehumidifier in the basement for her use, but she only emptied it once every couple of months.  Appellant testified

she began to notice water in the basement in the late spring and early summer of 2009. The water problem continued to get worse and existed for approximately three months.

{¶14} Appellant hired Everdry Waterproofing and paid them $16,500 to waterproof the basement. She selected Everdry because they were working on her father-in-law's house and offered to look at her basement as well. The basement is now dry.

{¶15} Appellant did not present expert testimony at trial.

{¶16} James Deam of B-Dry System of Zanesville testified as an expert witness on behalf of appellees. Deam testified the water problem was caused by a disconnected downspout and downspouts discharging too close to the foundation of the home. In his opinion, the water in the basement could have been resolved with proper grading and use of a dehumidifier. Otherwise, in his opinion, the work to dry the basement should have totaled approximately $8000.

{¶17} A beam under the porch was discussed at trial. Appellee Stephen Wright testified he had covered the beam with wood because it had sustained termite damage at some point. Appellant paid Husle Brothers Concrete Construction $1200 to replace the beam.

{¶18} Appellant filed a complaint alleging fraudulent inducement, fraud, and mutual mistake of fact. Appellees answered, discovery was exchanged, and a bench trial was held on August 23, 2012. The parties submitted proposed findings of fact and conclusions of law. On January 10, 2013, the trial court ruled in appellees' favor on all claims.

{¶19} Appellant now appeals from the January 10, 2013 Judgment Entry of the trial court.

{¶20} Appellant raises one assignment of error:

## ASSIGNMENT OF ERROR

{¶21} "I. THE TRIAL COURT'S DECISION IN FAVOR OF APPELLEES STEVEN L. AND KATHRYN S. WRIGHT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONSTITUTES REVERSABLE (*sic*) ERROR."

## ANALYSIS

{¶22} Appellant argues the decision of the trial court in favor of appellees was against the manifest weight of the evidence. We disagree.

{¶23} We note appellant cites to a number of wet-basement cases involving the standard for summary judgment. This case, however, was not decided upon summary judgment; the trial court conducted a bench trial. As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Peterson v. Peterson,* 5th Dist. No. CT2003–0049, 2004–Ohio–4714, ¶ 10, citing *Cross Truck v. Jeffries,* 5th Dist. No. CA–5758, 1982 WL 2911 (Feb. 10, 1982). Questions of law are reviewed by the court de novo. *Erie Ins. Co. v. Paradise,* 5th Dist. No.2008CA00084, 2009–Ohio–4005, ¶ 12.

{¶24} In *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. *SST Bearing Corp. v. Twin City Fan Companies, Ltd.,* 1st Dist. No. C110611, 2012–Ohio–2490, ¶ 16.

The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), is also applicable in civil cases. *Eastley,* at ¶ 17–19. A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley,* at ¶ 20 quoting *Twearson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001); *See also Sheet Metal Workers Local Union No. 33 v. Sutton,* 5th Dist No. 2011 CA00262, 2012–Ohio–3549 citing *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983)."In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley,* at ¶ 19.

*No Evidence Exists Appellees Concealed Wet Basement Issue*

{¶25} First, appellant argues judgment should have been rendered in her favor on her fraud claim. We disagree. To prove a claim of fraud, a plaintiff must establish the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (2) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Burr v. Stark*

*County Board of Commissioners*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), paragraph two of the syllabus.

{¶26} The elements of fraud must be established by clear and convincing evidence. Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). The burden to prove fraud rests upon the party alleging the fraud. *First Discount Corp. v. Daken*, 75 Ohio App. 33, 60 N.E.2d 711 (1st Dist.1944), paragraph seven of the syllabus.

{¶27} We find the judgment of the trial court to be supported by competent and credible evidence. The Ohio Supreme Court held, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley*, supra, 132 Ohio St.3d at 334. The court below found "[t]here was no convincing evidence that the [appellees] attempted to hide or cover up a wet basement problem," and we concur. The evidence in the record shows, simply, appellees experienced a wet basement, cleaned it up, and acknowledged the issue in the disclosure forms. Appellees were able to keep the basement dry and livable emptying the dehumidifier frequently; appellant emptied it infrequently. Moreover, the only expert testimony in the record established the source of appellant's water intrusion was the disconnected downspout and downspouts discharging too close to the foundation, combined with emptying the dehumidifier too infrequently. These issues could have been remedied short of the basement waterproofing process.

*No Application of Mutual Mistake of Fact*

{¶28} Further, appellant argues judgment should have been rendered in her favor on her claim for mutual mistake of fact. In *Reilley v. Richards*, the Ohio Supreme Court noted the doctrine of mutual mistake entitles a buyer to rescission of a real estate purchase contract where there is a mutual mistake as to a material part of the contract and where the complaining party is not negligent in failing to discover the mistake. 69 Ohio St.3d 352, 352-353, 1994-Ohio-528, 632 N.E.2d 507 (1994). A mistake is material to a contract when it is "a mistake * * * as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances." Id., citing 1 Restatement of the Law 2d, Contracts (1981) 385, Mistake, Section 152(1). Further, "the intention of the parties must have been frustrated by the mutual mistake." Id.

{¶29} In *Manns v. Wright*, we rejected the application of the doctrine of mutual mistake to a wet basement case such as this one, noting "[a]ppellants had knowledge of the issues and rejected their importance for the completion of the sale," impugning negligence on the part of the buyer and negating mutual mistake. 5th Dist. Richland No. 09CA133, 2010-Ohio-4281, ¶ 32. Similarly in this case, the answers on the disclosure form could have, or should have, raised the possibility with appellant that water had been an issue in the basement. The purchase agreement encouraged the buyer to have the home inspected but appellant chose not to do so. Appellee left a dehumidifier in the basement and told her "it was there for a reason." We find no basis to determine a mutual mistake of fact occurred in this case.

{¶30} Appellant's two assignments of error are overruled.

**CONCLUSION**

{¶31} The judgment of the Coshocton County Court of Common Pleas is affirmed.

By:  Delaney, J. and

Gwin, P.J.

Farmer, J., concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER
