[Cite as *Sarbaugh v. Miller*, 2025-Ohio-382.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JERRY G. SARBAUGH, TRUSTEE OF THE SARBAUGH KEYSTONE INHERITANCE TRUST DATED FEBRUARY 1, 2007 | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. CT2024-0014 |
| | : | |
| DONNA MILLER, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Muskingum County Court of Common Pleas, Case No. CH2022-0264

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      February 5, 2025

APPEARANCES:

For Plaintiff-Appellant:

Carter A. Brown
Grant J. Stubbins
59 North Fourt Street
P.O. Box 488
Zanesville, Ohio 43702

For Defendant-Appellee Donna Miller:

Derrick E. Moorehead
58 N. 5th Street
Zanesville, Ohio 43701

*Delaney, P.J.*

{¶1} Plaintiff-Appellant Jerry G. Sarbaugh, Trustee of the Sarbaugh Keystone Inheritance Trust Dated February 1, 2007, has appealed an Entry from the Muskingum County Common Pleas Court which denied the trust's motion for forfeiture and ordered it to execute a deed in conformance with a land contract and to pay restitution. Defendant-Appellee is Donna Miller.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Plaintiff-Appellant Jerry G. Sarbaugh is the Trustee of the Sarbaugh Keystone Inheritance Trust which holds the title of a house and real property in Muskingum County located at 239 Brighton Boulevard, Zanesville, Ohio. Prior to the trust being formed in 2007, his parents, Ronald and Marilyn Sarbaugh (the "Vendors"[1]), owned the property. On January 22, 1996, the Vendors entered into a land installment contract with Defendant-Appellee Donna Miller and Nathan Johnson (the "Vendees") to purchase the property (the "Land Installment Contract").

{¶3} Despite monthly payments made over the years, the Vendors never delivered a deed to the Vendees. In his capacity as Trustee, their son filed a Complaint on September 20, 2022 for Forfeiture and Forcible Entry and Detainer seeking restitution and recovery of the property. He maintained the Vendees were not entitled to the property because they breached the Land Installment Contract by not obtaining a separate insurance policy, not paying taxes, and failing to pay the balance owed in seven years.

---

[1] Trustee would also be included as "Vendor" because of the role he serves as Trustee. For ease of discussion, however, this Opinion will refer to him separately.

{¶4} In the Complaint, the Trustee stated that a copy of the Land Installment Contract was attached as Exhibit 1. The exhibit was made up of two separate documents: a pre-printed fillable form entitled "Land Installment Contract" and a letter from the Vendees to the Vendors that contained terms consistent with a purchase agreement.

{¶5} The Land Installment Contract had blank spaces to type the legal description of the property and various specific terms of the agreement including that the purchase price was $40,000.00 with a down payment amount of $4,000.00. The remaining balance of $36,000.00 plus an interest rate of 9% was to be paid in monthly installments of $400.00 until the contract was satisfied.

{¶6} One of the preprinted clauses provided that the Vendees would provide insurance as follows:

> The Vendee shall provide and maintain fire and extended insurance coverage for the improvements on the property, in an amount not less than the purchase price balance, in companies satisfactory to the Vendor, with loss payable to Vendor and Vendee, as their interests appear. The policy shall be delivered to and held by Vendor.

The Land Installment Contract further stated that the Vendors agreed to furnish evidence of a marketable title and that the Vendees were responsible for taxes.

{¶7} The contract was signed by both Vendors and both Vendees. It was recorded in the Muskingum County Recorder's Office, Volume 1268, pages 45-47.

{¶8} The second document that Trustee Sarbaugh attached to the Complaint as Exhibit 1 was a letter from the Vendees addressed to the Vendors. It was dated the same day as the Land Installment Contract and signed by both Vendees, Nathan Johnson and Donna Miller.

{¶9} The letter stated "we accept your offer to finance the sale of the house in a land contract to us." It then listed "the terms of the contract." The terms were the same regarding the purchase price, down payment, balance, interest rate, and monthly payment, but there were additional terms in the letter regarding the insurance, taxes, and payoff date.

{¶10} Regarding insurance and taxes, the letter stated:

> 6) We will insure the house, and provide Ronald and Marilyn Sarbaugh with a copy of proof of insurance and we will pay the premiums of the insurance with in 30 days of when the insurance bill is due. If we do not pay the insurance bill in the 30 days, then the land contract will be broken, and then we give up the house and all the payments made because we broke the land contract by not paying the insurance.
>
> 6. [sic] You will pay the real estate taxes [on] the house, provide us with proof of payment of taxes and we will repay you the taxes with in 30 days of when you give us the tax bill. If we do not pay the tax bill in the 30 days, then the land contract will be broken, and then we give up the house and all the payments made because we broke the land contract by not paying the real estate tax bill.
>
> . . .
>
> 8) If we do not pay off the house principal at the end of the 84 month[s] then we give up the house and all of the payments made because we broke the land contract by not paying [it] off in 7 years.

{¶11} The letter was not incorporated by reference or attached to the filing with the Muskingum County Recorder's office. It was not recorded as a separate document or as an amendment. Ms. Miller's counsel agreed she signed the letter and agreed to it, but it was "not of record for whatever reason."

{¶12} Neither party argued the effect of the letter, which at face value appears to be a purchase agreement. The Trustee argued that these provisions were the source of the breach, particularly the seven year pay off requirement that was not included in the Land Installment Contract.

{¶13} The Vendees took possession of the property in 1996 and began making payments, although there are no records of these payments. At trial, Jerry Sarbaugh testified that he did not receive any documentation when he was made trustee, and Ms. Miller testified that she lost any paperwork she had in a basement flood. Mr. Johnson passed away in 2018 and Mr. Sarbaugh passed in 2020. Mrs. Sarbaugh has dementia and was unable to testify.

{¶14} According to Ms. Miller, she and Mr. Johnson made their monthly payments by taking a check to the Vendors. She admitted that they did not directly obtain an insurance policy for the property, but she explained that the Vendors had an existing policy and told the Vendees that they could reimburse them when the payments became due on that policy. Ms. Miller testified that they also made a separate payment to the Vendors for the taxes. She described a similar routine whereby the Vendors would let them know when the taxes were due, and the Vendees would take a check to them.

{¶15} This system purportedly continued until 2000. Ms. Miller stated that Mrs. Sarbaugh did not tell them that the taxes were due that year, and the Vendees fell behind on the tax payments. She claimed that they came to an agreement with the Vendors that they would continue with the monthly payments of $400.00 until they were caught up.

{¶16} Ms. Miller thought that the principal balance was paid in 2005. She asked about the deed and Mrs. Sarbaugh responded she "still had to figure things up." Vendees continued making monthly payments because they believed they still owed insurance and taxes. In 2007 she stated that they received a letter from Mrs. Sarbaugh that led her to believe they had become current on the insurance and taxes. The

Vendees stopped making separate payments to cover the insurance and taxes but continued making the $400 monthly payments. Ms. Miller claimed that they continued making the monthly payments because they had not received the deed, they had not consulted an attorney, and they felt the monthly payments could go to taxes and insurance.

{¶17} On February 1, 2007, Mr. and Mrs. Sarbaugh executed a Quit-Claim Deed transferring several properties, including 239 Brighton Boulevard, to "Jerry G. Sarbaugh, Trustee, or his Successor(s) as Trustees of the Sarbaugh Keystone Inheritance Trust, dated February 1, 2007." The Trustee testified that he first was provided the Land Installment Contract in 2007 when he was named trustee. He was not given any instructions regarding the contract because it "was a nonissue at that time." Mrs. Sarbaugh continued to be involved in accepting the payments from the Vendees.

{¶18} The Trustee did not begin actively managing the trust assets until 2020 after his father died. Prior to that, his involvement in the accounting for the property was limited to conversations he had with his father. According to the Trustee, his father told him that the Land Installment Contract had been breached early on and that the Vendees were "tenants." The Trustee relied on his father's statements that the Land Installment Contract had been breached and that the Vendees were renting the property. He concluded that the monthly payments were for rent.

{¶19} At some point in January 2021, the Trustee had his nephew post a notice at the property that the rental price was going to change. Soon after, he received a phone call from Ms. Miller in which she stated she believed she owned the property.

She requested that he deed the property to her in accordance with the Land Installment Contract.

{¶20} Ms. Miller then consulted with an attorney. She stopped making any payments in March 2021 and asked for the deed.

{¶21} On July 19, 2022, the Trustee placed a Notice of Non-Renewal on Ms. Miller's door. It stated, in part, "we have elected not to renew your month-to-month tenancy. Accordingly, your lease will terminate August 22, 2022."

{¶22} The Trustee's attorney sent a letter to Ms. Miller's attorney dated July 20, 2022, acknowledging the Notice of Non-Renewal. The letter also stated that the Land Installment Contract contained conditions that Ms. Miller would pay insurance premiums and taxes for the property and that she breached the agreement from the outset by failing to do so. He stated "the contract expired by its own terms" and "Ms. Miller has continued to rent the house as a month-to-month tenant." He further stated that his client was not required to comply with R.C. 5313.07 and pursue a foreclosure. He offered to "revive" the Land Installment Contract and sell the property for a onetime payment of $58,000. He concluded that failure to pay that amount would result in an eviction action.

{¶23} Ms. Miller did not pay the new sales price and remained on the premises. On August 24, 2022, Trustee Sarbaugh left a copy of a Notice to Leave the Premises at the property.

{¶24} On September 20, 2022, Trustee Sarbaugh filed a Complaint in the Muskingum County Court of Common Pleas for Forfeiture and Forcible Entry and Detainer against the Vendees. He sought an order forfeiting the Land Installment Contract and awarding restitution and recovery of the property, rent for the months of

January-September 2022, and all additional months until Ms. Miller vacated the property, forfeiture of the security deposit to apply to any damages, and additional money damages.

{¶25} Ms. Miller filed a Counterclaim in which she asked for specific performance of the Land Installment Contract and asked the court to find that the trust was unjustly enriched by the Vendees payments totaling $63,600 made after they thought the Land Installment Contract had been paid. She asked the court to award the amount of the overpayment, punitive damages, and attorney's fees.

{¶26} The Trustee attempted to notice the unknown heirs, executors, administrators, successors, and assigns, of Mr. Johnson. On August 7, 2023, he obtained a default judgment against him.

{¶27} On December 21, 2023, the trial court held a bench trial. Both the Trustee and Ms. Miller testified.

{¶28} The trial court issued an Entry in which it found, in pertinent part, that the Land Installment Contract was "altered by the agreement of the parties" and it was agreed the Vendors' existing insurance policy would remain in place and the Vendees would make payments to the Vendors. Similarly, the trial court found it was altered again to allow the Vendees more than seven years to pay the balance owed. The court found that Vendees continued to pay the monthly installment payment, real estate taxes, and insurance until sometime in 2007, and continued to pay $400 per month until March 2022.

{¶29} The trial court noted that the parties stipulated that if the installment payments were made in accordance with the Land Installment Contract, it would have

been paid fully in August 2008. It also noted that the estate taxes and insurance cost approximately $2,000 per year and that the Trustee paid the insurance and taxes after 2007.

{¶30} The court held that R.C. Chapter 5313 applied to the Land Installment Contract and that because the Vendees had paid over 20% of the contract and beyond 5 years, the trust failed to meet the statutory requirements for forfeiture. It denied the request that the title be forfeit with the property restored to the trust. The trial court ordered the Trustee to execute a deed in conformance with the Land Installment Contract to Ms. Miller. It further determined that Ms. Miller had a valid claim for unjust enrichment and ordered the Trustee to pay restitution in the amount of $31,600 plus court costs and interest. This amount reflected half of the payments made past September 2007 and was offset by taxes and insurance that the Trustee paid. Trustee Sarbaugh has appealed that Entry to this Court.

## ASSIGNMENTS OF ERROR

{¶31} I. THE TRIAL COURT ERRED BY DENYING APPELLEE'S MOTION TO DISMISS.

{¶32} II. THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT.

{¶33} III. THE TRIAL COURT ERRED BY FINDING IN APPELLEE MILLER'S FAVOR AT TRIAL AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BINDING OHIO LAW.

{¶34} IV. THE TRIAL ERRED BY ORDERING APPELLANT TO PAY MONETARY DAMAGES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BINDING OHIO LAW.

{¶35} V. THE TRIAL COURT ERRED BY GRANTING INJUNCTIVE RELIEF TO APPELLEE MILLER AGAINST BINDING OHIO LAW.

**ANALYSIS**

I.

{¶36} In the first assignment of error, the Trustee has argued that the trial court erred by denying plaintiff's motion to dismiss for failure to state a claim upon which relief could be granted. He maintained that Ms. Miller's claim for specific performance was a remedy and not a separate cause of action. He also maintained that her claim for unjust enrichment was brought outside the stature of limitations.

{¶37} A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545 (1992). We review a motion to dismiss under a *de novo* analysis. Accordingly, we must accept all factual allegations of the complaint, in this case a counterclaim, as true, and all reasonable inferences must be drawn in favor of the nonmoving party. *See, Byrd v. Faber*, 57 Ohio St.3d 56 (1991). To dismiss a counterclaim pursuant to Civil Rule 12(B)(6), it must appear "beyond doubt" that the nonmoving cannot prove any set of facts in support of the claim that would entitle her to relief. *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143 (1991).

{¶38} In arguing that the claim for specific performance should have been dismissed, the Trustee stated that Ohio does not recognize specific performance as a cause of action, but as a remedy. He also stated that it did not put him on notice of a claim for relief because he could not determine what statute of limitations or other affirmative defenses applied and he could not determine what his exposure was or how many resources he should devote to defend the claim.

{¶39} Specific performance of a contract is a distinctively equitable remedy. *Sternberg v. Bd. of Trustees of Kent State Univ.*, 37 Ohio St.2d 115 (1974), citing *Commrs. of Muskingum Cty. v. State*, 78 Ohio St. 287, 305 (1908). "A specific performance claim is one which, in essence, seeks to eliminate the breach itself by requiring the parties to expressly adhere to the terms and conditions of the contract" rather than provide monetary damages. *Reed v. Triton Serv., Inc.* 14-Ohio-3185, ¶ 11 (12th Dist.). Ohio Jurisprudence describes the nature of specific performance as follows:

> Specific performance of contracts is an equitable remedy, and an action for specific performance is an equitable action. The remedy of specific performance of contracts is a well-recognized and important branch of jurisprudence but one that generally is available only to protect contract rights.
>
> The remedy of specific performance requires a part[y] to provide performance specifically as agreed. The purpose of the remedy is to give the one who seeks it the benefit of the contract by compelling the other party to the contract to do that which was agreed - to perform the contract on the precise terms agreed upon by the parties. Hence, a decree for specific performance is nothing more or less than a means of compelling a party to do precisely that which ought to have been done without the court's coercion.
>
> ***
>
> Specific performance  is not a remedy  that may  be sought on  all contracts; ordinarily, where a contract is breached by one party, the other party is limited to an action for damages for breach; however, if such damages do not provide an adequate remedy, an action for specific performance may lie.

84 Ohio Jurisprudence 3d, Specific Performance, Section 1 (2016); *Tremmell v. Broner*, 2023-Ohio-4143 (5th Dist.).

{¶40} Although specific performance is remedial in nature, the Ohio Supreme Court has recognized:

> It is without question that an action for specific performance, any accounting that might be ancillary to it, and the award of any damages that may under the circumstances appear to be necessary, are matters in equity and may be determined by the trial court in its sound discretion.

*Sandusky Properties v. Aveni,* 15 Ohio St.3d 273 (1984), citing *Quarto Mining Co. v. Litman*, 42 Ohio St.2d 73, 87 (1975), *Sternberg v. Bd. of Trustees* (1974), 37 Ohio St.2d 115, 118 (1974), 49 Ohio Jurisprudence 2d, Specific Performance, Section 5 (1961).

{¶41} In *Spengler v. Sonnenberg*, 88 Ohio St. 192, 203 (1913), the Ohio Supreme Court held that "specific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case." *Accord JoMar Group LTD v. Brown,* 2023-Ohio-98, ¶ 31 (5th Dist.), quoting *Hog Heaven of New Philadelphia, Inc. v. M & M W. High Ave, L.L.C.*, 2014-Ohio-5125, ¶16 (5th Dist.). The remedy of specific performance is governed by the same general rules which control the administration of all other equitable remedies. *JoMar* at ¶ 31*,* quoting *Manning v. Hamamey*, 1998 WL 57093 (8th Dist. Feb. 12, 1998). "There appears to be no question that when a decree for specific performance in the sale of real estate is granted to the purchaser, he is entitled to be put in the position he would have been in had the contract of sale and purchase been carried out on the date agreed upon." *Sandusky Properties,* 15 Ohio St.3d at 276, quoting *Hellkamp v. Boiman*, 25 Ohio App.2d 117, 122, (1st Dist. 1970).

{¶42} In her counterclaim, Ms. Miller titled the first claim for relief "Specific Performance." Although captioned as specific performance, review of Ms. Miller's counterclaim reveals it was based on a contract claim. She acknowledged the contract, her performance of the duties required by the contract, and Vendor's failure to deliver a deed free and clear in accordance with the contract. Rather than seeking money damages for the property, she claimed that the land was unique and unusual and that she was left with no other remedy at law other than an equitable one. Given that this pleading was in response to the trust's complaint, we reject the Trustee's argument that it failed to put him on notice of Ms. Miller's claim or that it was not recognized by Ohio law.

{¶43} Trustee has also argued that the trial court failed to grant his motion to dismiss the claim of unjust enrichment because it was raised outside of the statute of limitations. R.C. 2305.07 governs claims for unjust enrichment and states that claims must be "brought within six years after the cause thereof accrued." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 182-183 (1984), citing R.C. 2305.07. Unlike other statutes of limitation, R.C. 2305.07 does not define the time at which a claim for unjust enrichment "accrues." For example, R.C. 2305.09 provides that a claim for the wrongful taking of personal property does not accrue until the wrongdoer is discovered, and a claim for fraud does not accrue until the fraud is discovered. As a result, R.C. 2305.07 leaves that determination to the judiciary. *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84 (1983), paragraph one of the syllabus ("Absent legislative definition, it is left to the judiciary to determine when a cause 'arose' for purposes of statutes of limitations").

{¶44} Courts have held an unjust enrichment claim arises when a party retains money or benefits which, in justice and equity, belongs to another. *Ignash v. First Service Federal Credit Union*, 2002-Ohio-4395, ¶ 17 (10th Dist.), citing *Liberty Mut. Ins. Co. v. Indus. Comm.*, 40 Ohio St.3d 109, 110-111 (1988). This Court has held that a claim accrues on the date when the money or property is wrongly retained. *Grilli v. Smith*, 2012-Ohio-6146, ¶ 61 (5th Dist.); *see also Palm Beach Co. v. Dun & Bradstreet, Inc.*, 106 Ohio App.3d 167, 175 (1st Dist. 1995). In *Grilli*, we determined that the cause of action accrued when the defendant took unauthorized loans, rather than the date he failed to pay them back. Other courts have similarly looked to the specific facts of the case to determine when the wrong occurred. *Blank v. Bluemile, Inc.,* 2021-Ohio-2002 (10th Dist.) (harm took place when defendant took control of plaintiff's share in an IPO in contravention of his ownership interest); *LeCrone v. LeCrone,* 2004-Ohio-6526 (10th Dist.) (harm occurred when a father wrongfully asserted ownership of property despite his son's use and improvement of the property); and *Chaplain* Kieffer Post 1081 v. Wayne Cty. Veterans Association, 1988 WL 99188 (9th Dist. Sept. 21, 1988) (harm took place when defendant announced it was keeping deposited funds for its own use).

{¶45} In those cases, the wrongful retention or harm took place in a single action. In this case, Ms. Miller contends that the unjust enrichment occurred from a series of monthly payments extending from 2007 to 2021. In *Desai v. Franklin*, 2008-Ohio-3957 (9th Dist.), the court looked at a similar situation in which payments for a medical practice were paid in installments. The court determined

> So long as a person continues to confer a benefit upon another, and the retention of that benefit is unjust, the unjust enrichment continues. See *Palm Beach Co.,* 106 Ohio App.3d at 175 (explaining that the unjust-enrichment claim accrued "at

the latest * * * when the last of the alleged overcharges, or false billings or accountings, occurred").

*Id.* at ¶ 22.

{¶46} That court also noted that federal courts have applied the "last-rendition-of-services test" which they deemed was separate from the discovery rule. *Id.*, citing *Baer v. Chase,* 392 F.3d 609, 622-623 (C.A.3 2004). Under this test, "a cause of action for unjust enrichment begins to run when the final service has been performed." *Id.*

{¶47} Trustee has argued that Ms. Miller's claims for specific performance and unjust enrichment claim accrued in 2007 when she thought she fulfilled her obligations under the Land Installment Contract. We disagree.

{¶48} Ms. Miller's claim for unjust enrichment did not accrue until she made the last payment. First noting that her claim is for specific performance as to the title of the property and unjust enrichment as to the continued payments to the trust, the record reflects that she continued to make payments until March 2021. Because she asserted her claim for unjust enrichment within six years of when she made her last payment, her claim was not barred by the six-year statute of limitations.

{¶49} The trial court did not err by denying the motion to dismiss. It did not err as a matter of law in determining that the pleadings precluded dismissing the counterclaim. Similarly, it did not err as a matter of law or abuse its discretion in determining that the counterclaim was filed within the statute of limitations. The first assignment of error is overruled.

II.

{¶50} The Trustee's second assignment of error is that the trial court erred in denying his motion for summary judgment. He has argued that the doctrine of laches

should have been applied because Ms. Miller waited 15 years to assert her claims, after all the other original parties were no longer able to testify. He also argued that her counterclaim for unjust enrichment was outside the statute of limitations. Finally, he argued that she breached the Land Installment Contract in the first month by failing to obtain an insurance policy.

{¶51} We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

In considering such a motion, a trial court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321 (1984). Rather, it should enter summary judgment only if it appears that no material fact is genuinely disputed, and, after construing the allegations most favorably towards the non-moving party, it determines that reasonable minds could draw only one conclusion from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427 (1981).

{¶52} Once the motion is made by the moving party and supported as provided in the rule, "an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E). A fact is material if it affects the outcome of the case under the applicable substantive law. *Guernsey Cty. Community Dev. Corp. v. Speedy*, 2023-Ohio-1796, ¶

24 (5th Dist.), citing *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301 (6th Dist. 1999).

{¶53} On appeal, motions for summary judgment are reviewed *de novo. Doe v. Shaffer*, 90 Ohio St.3d 388 (2000). When reviewing a trial court's decision to grant summary judgment, an appellate court stands in the shoes of the trial court and uses the same standard and evidence. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35 (1987).

{¶54} After concluding discovery, the Trustee filed a motion for summary judgment "because the doctrine of laches, Ohio's statute of limitations, and Ohio's statute of frauds" prevent a party to a written contract from "amending said contract with only testimony over twenty (20) years after the contract was created." The statute of limitations was discussed in the first assignment of error, and the statute of frauds is argued in the third assignment of error. Therefore, we will address the doctrine of laches.

{¶55} Laches is an equitable doctrine. It has been defined by the Ohio Supreme Court as "'an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.'" *Connin v. Bailey*, 15 Ohio St.3d 34, 35 (1984). Delay in asserting a right does not of itself constitute laches, and to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting the claim. *Id.* at 35-36. *See also Smith v. Smith*, 168 Ohio St. 447, paragraph three of the syllabus (1959).

{¶56} While we review the trial court's decision on summary judgment using a *de novo* standard, we review the decision of a trial court concerning the application of

the doctrine of laches for an abuse of discretion. *Hayman v. Hayman*, 2009-Ohio-4855, ¶ 46 (5th Dist.), citing *Payne v. Cartee*, 111 Ohio App.3d 580, 590 (4th Dist. 1996). An abuse of discretion is more than just an error in judgment but rather implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶57} Trustee claims the doctrine of latches is appropriate in this case because Ms. Miller waited until 2022 to stop making monthly payments and to demand a deed to the property. If she had filed her claims earlier, he contends, his father or Mr. Johnson would be able to testify about any amendments to the Land Installment Contract.

{¶58} Her delay in seeking title does not automatically constitute laches. *See Estate of Pavelzik v. Pavelzik*, 2010-Ohio-5318 (5th Dist.), citing *Zartman v. Swad*, 2003–Ohio–4140, ¶ 51 (5th Dist.). The party requesting the application of laches must demonstrate that he was prejudiced by the delay. In this case, both parties were affected by the deaths. Despite his father's absence, the Trustee was able to testify about what his father told him regarding the contract. He stated his father concluded that the Land Installment Contract had been breached and that the vendees had, in his father's mind, been reduced to lessees. Ms. Miller was similarly prejudiced because Mr. Johnson could have corroborated that the contract had been altered and that the insurance and taxes had been paid in separate payments to the Vendors.

{¶59} With both parties in roughly the same position, we are unable to find an abuse of discretion in the court's implicit conclusion that there was no unreasonable and prejudicial delay in asserting the property rights at issue. The trial court correctly denied the Trust's laches defense under the circumstances of this case.

{¶60} Moreover, this Court has held that "a party in possession of land who resorts to a court of equity to settle a question of title is not chargeable with laches, no matter how long his delay. Such a party is at liberty to wait until his title is attacked before he is obliged to act.'" *Klar v. Hoopingarner,* 62 Ohio App. 102 (5th Dist. 1939), quoting 4 Pomeroy's Equity Jurisprudence, 4th Ed., 3444, Section 1454. The record in this case is clear that Ms. Miller was in possession of the property. Accordingly, the trial court did not abuse its discretion for not applying the doctrine of laches.

{¶61} The trust's final argument regarding summary judgment is that summary judgment should have been granted because Ms. Miller admitted she never purchased an insurance policy as required by the contract and thus "failed to comply with the terms of the Land Installment Contract from the very beginning." To address this claim, we must first look at the statutes governing land installment contracts.

{¶62} Chapter 5313 of the Ohio Revised Code governs land installment contracts. R.C. 5313.01(A) defines then, in pertinent part, as follows:

> an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation.

A land installment contract conveys a present ownership interest in realty. *Id.* at ¶ 11, quoting *Riverside Builders,* 1990 WL 75433, at *4 (10th Dist. June 7, 1990). Stated another way, "[a] land installment contract is an executory agreement whereby the purchaser (vendee) agrees to pay the purchase price and is vested with equitable ownership, while the seller (vendor) retains bare legal title in the property to secure payment of the purchase price." *Baraby v. Swords*, 2006-Ohio-1993, ¶ 14 (3d Dist.), citing

*Wood v. Donohue*, 136 Ohio App.3d 336, 339 (1st Dist. 1999). The vendor is required to record a copy in the office of the county recorder. R.C. 5313.02, R.C. 5301.25.

{¶63} In the case of a breach, terminating a land installment contract is an exclusive remedy. R.C. 5313.10. Termination may occur through forfeiture if the contract has been in effect for less than five years pursuant to R.C. 5323.08, or foreclosure if in effect for more than five years pursuant to R.C. 5313.07. "A judgment for the vendor shall operate to cancel the land installment contract" and the clerk shall transmit a copy to the county recorder's office. R.C. 5313.09. Once recorded, the judgment entry shall serve as an instrument of cancellation. "'R.C. 5313.07 is designed to give additional protection to the vendee of a land installment contract who has occupied the property for a substantial period of time, five years or more, or who has acquired substantial equity in the property, 20 percent or more of the purchase price.'" *Sood v. Rivers*, 2024-Ohio-3064, ¶ 30 (11th Dist.), quoting *Burdge v. Welsh*, 1983 WL 3367, *2 (10th Dist. February 22, 1983).

{¶64} In this case, there was no testimony or evidence that the Vendors sought to terminate the contract for any reason, including insurance and taxes. Accordingly, the land installment contract remained in effect.

{¶65} The Trustee has argued that the Vendees failure to obtain an insurance policy transformed their status into tenants at sufferance. In Ohio, the term "tenant at sufferance" is applied to a tenant who is in possession of the property and holds over after the term of his lease expires. *Anderson v. Brewster*, 44 Ohio St. 576, 580 (1886). The parties in this case, however, were parties to the Land Installment Contract. They did not have a lease agreement or a lease to own agreement.

{¶66} In support of his argument, the Trustee cites *Francis v. Nickoli*, 2011-Ohio-6358 (5th Dist.). The trial court properly distinguished that case.

{¶67} In *Francis*, the land installment contract was never filed with the recorder's office and the vendee failed to make any of the monthly payments. Almost a year later the parties then executed a purchase agreement for the same property, with the buyer securing financing elsewhere. A condition of the purchase agreement was that the amount owed under the previous land installment contract had to paid.

{¶68} A close reading of *Francis* reflects that the trial court awarded the seller damages for the buyer's failure to make payments as required under the new purchase agreement, not the land installment contract. The trial court held that the buyer was a tenant at sufferance based on the purchase agreement and awarded damages to the seller accordingly.

{¶69} In this case, the Vendees had a valid, filed Land Installment Contract. They made their monthly installment payments and were permitted to pay the premiums of an existing policy. There is no evidence that the Vendors took any action on the contract until the Trustee filed an eviction action.

{¶70} Once the Land Installment Contract was filed with the recorder's office, the Vendees had an equitable ownership in the property. That ownership could be challenged only by a forfeiture action or a foreclosure action. Despite Trustee and his father's way of thinking, the Vendees equitable interest did not transform to that of a tenant. As for the actual breach, it remained a question of fact whether the conditions of the contract were met. Accordingly, the trial court properly denied summary judgment on this issue. The second assignment of error is overruled.

III.

{¶71} The Trustee's third assignment of error is that the verdict in Ms. Miller's favor was against the manifest weight of the evidence and Ohio law. He has claimed it was against the manifest weight of the evidence because the court relied on "uncorroborated verbal testimony" that the Land Installment Contract had been orally amended so that the Vendees could pay the insurance, taxes, and principal amount "in their own time." He has claimed that the verdict was against Ohio law because any verbal alteration contravened the Statute of Frauds, the trial court did not properly apply R.C. 5313, the court improperly interpreted case law, and the findings were in contravention of the Doctrine of Laches.

{¶72} The trial court conducted a bench trial in this case and heard the testimony of the Trustee and Ms. Miller. It concluded that the Land Installment Contract had been altered so that the Vendees could make payments for the existing insurance, they could take longer than seven years to pay the balance due, they paid the insurance and taxes until sometime in 2007, and they continued paying $400 per month until Mr. Johnson's death, at which time Ms. Miller continued making the payments.

{¶73} In addressing a manifest weight of the evidence claim, a reviewing court is to examine the entire record and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." (Citation omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20; *see also Sheet Metal Workers Local Union No. 33 v. Sutton*, 2012-Ohio-3549 (5th Dist.). The evidence on each element must satisfy the burden of persuasion or weight. *Eastley* at ¶ 20.

{¶74} An appellate court does not operate as a fact finder. *Markel v. Wright*, 2013-Ohio-5274 (5th Dist.). It neither weighs the evidence nor judges the credibility of witnesses. *Id.* It does do not substitute its judgment for that of the trial court when competent and credible evidence exists to support the trial court's findings of fact and conclusions of law. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Id.* Accordingly, a trial court may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468 (4th Dist. 1998).

{¶75} The trial court was in the best position to evaluate the witnesses and their testimony. The court heard testimony that the money was paid each month and that the insurance and taxes were paid separately. The parties agreed that the principal and interest were paid off. The record reflected that the Vendors did not seek to have the interest in the property forfeited or did not initiate any proceedings until this action was filed. Accordingly, there was competent, credible evidence for the court to determine that the terms of the Land Installment Contract were met.

{¶76} Trustee has argued that any testimony regarding oral agreements for how the insurance, taxes, and payoff date were handled violated the Statute of Frauds.

{¶77} The Statute of Frauds requires contracts for the sale of real property to be reduced to writing and signed by the party against whom it is held. See, R.C. 1335.04. It is the Trustee's position that the Statute of Frauds barred Vendee's evidence that they

had an oral agreement with the Vendors on how they would pay for insurance and taxes or that they were not required to pay the balance in seven years. In its decision, the trial court did not distinguish between the Land Installment Contract and the Purchase Agreement, but determined that the agreement had been modified.

{¶78} This Court has held that part performance of a contract by a party relying on an oral agreement is sufficient to remove the agreement from the requirements of the Statute of Frauds and impose an obligation on both parties to perform according to the terms of that agreement. *Conklin v. Conklin,* 1993 WL 218307, *4 (5th Dist. May 28, 1993), citing *Gleason v. Gleason*, 64 Ohio App.3d 667, 674 (4th Dist. 1991); *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282 (1965). Where partial performance exists, a party who has accepted partial performance by another party under the contract will typically be barred from asserting the Statute of Frauds in order to avoid meeting its own contractual obligations. *Crillow v. Wright*, 2011-Ohio-159, ¶ 47 (5th Dist.).

{¶79} There was competent credible evidence for the trial court to find that the Vendees performed by paying the insurance and taxes directly to the Vendors, making the Statute of Frauds inapplicable on that issue. The third assignment of error is overruled.

IV.

{¶80} The Trustee's fourth assignment of error is that the trial court erred by awarding monetary damages pursuant to unjust enrichment against the manifest weight of the evidence and Ohio law. The doctrine of unjust enrichment "applies when a benefit is conferred, and it would be inequitable to permit the benefitting party to retain the benefit without compensating the conferring party." *Garb-Ko, Inc. v. Benderson*, 2013-

Ohio-1249 (10th Dist.). The purpose of an unjust enrichment claim is not to compensate the plaintiff for loss or damage suffered by the plaintiff, but to enable the plaintiff to recover the benefit she conferred on the defendant when it would be unjust for the defendant to retain the benefit. *Johnson v. Microsoft Corp.*, 2005-Ohio-4985. The elements of an unjust enrichment claim are: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) it would be unjust to allow the defendant to retain the benefit without payment to the plaintiff. *Robinette v. PNC Bank*, 2016-Ohio-767 (5th Dist.). The amount awarded for unjust enrichment is "the amount the defendant benefited." *Bollman v. Lavery Automotive Sales & Serv.*, LLC, 2019-Ohio-3879 (5th Dist.). Unjust enrichment entitles a party only to restitution of the reasonable value of the benefit conferred. *FedEx Corp. Services, Inc. v. Heat Surge,* 2019-Ohio-217 (5th Dist.).

{¶81} Based on the testimony at trial, the Land Installment Contract would have been completed by August of 2008. The Trustee continued to accept $400 monthly payments because he considered them to be rent. As previously noted, the Land Installment Contract gave the Vendees an ownership interest in the property. Even if it had been breached, it did not change to a lease. The trial court properly adjusted for any payments Trustee made for taxes and insurance at the time Vendee stopped making the payments and it properly awarded half of the total amount to Ms. Miller. The fourth assignment of error is overruled.

V.

{¶82} The Trustee's fifth assignment of error is that trial court erred as a matter of law by granting injunctive relief. He has argued that the trial court overlooked the fact

that Ms. Miller was not entitled to full title of the property because "Mr. Johnson would also have an interest." Further, he has argued that because the default judgment ordered Mr. Johnson's interest in the property was forfeited and vested in the trust, the trial court did not have the authority to vacate its order *sua sponte* by ordering the deed be filed giving Ms. Miller full interest.[2]

{¶83} In resolution of Ms. Miller's claims, the trial court recognized that the purchase price and interest had been paid, requiring Trustee to deliver a deed to Ms. Miller. The trial court ordered the Trustee to "execute a deed in conformance with the Land Contract to Donna Miller, as Nathan Johnson is incapable of delivering a deed upon."

{¶84} By virtue of the Land Installment Contract, the Vendees became owners of the property, while the Vendors retained the legal title and in effect, held a lien until the unpaid balance was paid. There was testimony from Ms. Miller that they had made payments of $400 from 1996 until 2021 and that they had made separate payments for the insurance and taxes until 2007. The trial court did not abuse its discretion in finding that the balance due of $36,000 had been paid. The Vendors never sought to forfeit or foreclose on the property, meaning the Land Installment Contract was still in effect and a deed had to be delivered to the Vendees after payment had been fulfilled.

{¶85} A deed must be validly delivered to be operative as a transfer of ownership of real property. *Ma v. Gomez,* 2023-Ohio-524 (8th Dist.)   The deed could

---

[2] The Trustee also argued that the counterclaims were outside of the statute of limitations, and that the Land Installment Contract was breached at the outset making the Vendees "tenants at sufferance." Those issues have been addressed in previous sections of this Opinion.

not be delivered to Mr. Johnson. Therefore, the trial court properly ordered the Trustee to deliver the deed to Ms. Miller in her name. The fifth assignment of error is overruled.

{¶86} The trial court did not err in finding that the terms of the Land Installment Contract had been satisfied which required the Trustee to provide the surviving Vendee title to the property. The court did not err when it determined that the Trustee was unjustly enriched by payments made after the Land Installment Contract had been satisfied. The fifth assignment of error is overruled.

## CONCLUSION

{¶87} The judgment of the Muskingum County Court of Common Pleas is affirmed.


By:  Delaney, P.J.,

Hoffman, J. and

King, J., concurs

separately.

*King, J. concurs separately*,

{¶ 88} I join the opinion and judgment in full. On the issue of the statute of limitations and damages for unjust enrichment, I think the outcome is directed by *U.S. Bank Natl. Assn. v. Gullotta*, 2008-Ohio-6268, ¶ 30. Each erroneous payment, past and future, would give rise to its own cause of action and thus there is no statute of limitation issue to bringing suit for unjust enrichment. While this may be the case, I have doubts that a court can award damages for erroneous installment payments occurring outside the statute of limitations. From the briefing and my understanding of the record, it appears to me that this issue was not raised below or to this court; thus, I do not think we should raise it sua sponte. Accordingly, I concur in affirming the trial court.